444 A.2d 1217

**Lynn Wagner MYERS, Charliann Baker and Florence Wimbish, Appellants,**

v.

**USAA CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued March 3, 1981.

Filed April 23, 1982.

Joseph Mellace, Philadelphia, for appellants.

Sharon M. Reiss, Philadelphia, for appellee.

Before CERCONE, President Judge, and WICKERSHAM and BROSKY, JJ.

WICKERSHAM, Judge:

On October 15, 1979, a complaint in assumpsit and trespass was filed in the Court of Common Pleas of Philadelphia County on behalf of appellants[1] against appellee USAA Casualty Insurance Company. The complaint alleged that on October 24, 1975, almost four years previous to the filing of the complaint, plaintiff Lynn Wagner Myers was operating a motor vehicle in the city of Philadelphia which vehicle was involved in an accident with another motor vehicle resulting in personal injuries to her. The complaint included personal injury damage claims for plaintiff Charliann Baker and plaintiff Florence Wimbish, who were passengers in the vehicle operated by Lynn Wagner Myers. As to all three plaintiffs, the complaint sought punitive damages on the basis that USAA Casualty Insurance Company had allegedly acted willfully, intentionally, wantonly and recklessly in the handling of their claims. The defendant insurance company was identified in the complaint as the company which insured the motor vehicle involved in the accident and operated by Lynn Wagner Myers under a policy of insurance issued to Florence Wimbish. The complaint alleged further that the defendant had refused to make payment of medical bills, lost wages, impairment of earning capacity and loss of ability to work, incurred by the three plaintiffs, and finally,

---

1. Lynn Wagner Myers, Charliann Baker and Florence Wimbish.

that it was defendant's obligation to pay these sums under the Pennsylvania No-fault Motor Vehicle Insurance Act.[2]

Preliminary objections were filed on behalf of USAA Casualty Insurance Company attacking those counts of the complaint seeking punitive damages and further, by way of demurrer, raising the defense that section 1009.106(c) of the Pennsylvania No-fault Motor Vehicle Insurance Act provides that an action may be commenced not later than two years after the date of the accident.[3]

Subsequently, plaintiffs filed an amended complaint in trespass and assumpsit, which amended complaint expanded somewhat the allegations relating to punitive damages. Preliminary objections were again filed on behalf of the defendant of the same nature as before.

In an opinion and order dated July 29, 1980, the Honorable Edward B. Rosenberg ordered that plaintiffs' complaint be stricken with prejudice. This appeal followed.[4]

2. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.* (Supp.1981–82).

3. (1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.
Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 106, 40 P.S. § 1009.106(c)(1) Supp. (1981–1982).

4. Appellants frame the statement of questions involved as follows:
I. Whether the Court abused its discretion in granting the Defendant's Preliminary Objections and dismissing the amended Complaint?
A. Whether such Preliminary Objections should be granted when the plaintiff's were not permitted to respond to same by Motion Court?
B. Whether the Complaint was filed after the period set forth by the statute of limitations in the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.106?
C. Whether the punitive damage claim set forth in Count II, IV & VI of the Complaint state a valid cause of action in Pennsylvania?

■  Turning first to the punitive damage issue, this has been recently settled by our supreme court in *Smith v. Harleysville*, 494 Pa. 515, 431 A.2d 974 (1981) in which the supreme court held as follows:

In any event, this Court has concluded in *D'Ambrosio* that there is no basis for the judicial creation of a cause of action for bad faith conduct.  As stated in *D'Ambrosio*,

'[t]here is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act [ (Act of July 22, 1974, P.L. 589, § 1 et seq., 40 P.S. § 1171.1 et seq. (Supp.1980) ], must be supplemented by a judicially created cause of action.  As one critic of California's approach has observed,

'[t]he California courts have created this "new tort" in an obvious attempt to afford more protection to insureds.  However, it has not really been established that there is a need of this additional protection.  * * * State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis.  Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations.'

Kircher, Insurer's Mistaken Judgment—A New Tort?, 59 Marq.L.Rev. 775, 786 (1976).  Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers.  In our view it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.'

*Id.*, 494 Pa. at 512, 431 A.2d at 975 (quoting *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 508, 431 A.2d 966, 970 (1981)).

■  As regards the statute of limitations issue, appellants argue in their brief that "[t]he Act clearly provides that suit

Brief for Appellants at 1.

may be started two years from the loss, that is, the non-payment by the insurer." Brief for Appellants at 6. Appellee responds that under *Donnelly v. DeBourke*, 280 Pa.Super. 486, 421 A.2d 826 (1980), the limitations period begins on the date that the injury is sustained. We recently overruled *Donnelly* in *Bond v. Gallen*, 292 Pa.Super. 207, 437 A.2d 7 (1981). Both *Donnelly* and *Bond* involved tort actions by injured plaintiffs against third party tortfeasors and the applicable statute of limitations was the general two year limitation for personal injury actions found at 42 Pa.C.S. § 5524. The issue in *Donnelly* and *Bond* was when the limitations period begins to run where the right to bring the tort action is restricted by section 301(a) of the No-Fault Act. Under section 301(a), tort liability is abolished with respect to any injury arising out of the maintenance or use of a motor vehicle except in the following situations:

(1) An owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle.

(2) A person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles remains liable for injury arising out of a defect in such motor vehicle which is caused or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

(3) An individual remains liable for intentionally injuring himself or another individual.

(4) A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. A person is not liable for loss which is not compensated because of limitations in accordance with subsection (e) of section 202 of this act.

(5) A person remains liable for damages for non-economic detriment if the accident results in:

(A) death or serious and permanent injury; or

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth; or

(C) medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days; or

(D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe.

(6) A person remains liable for injury arising out of a motorcycle accident to the extent that such injury is not covered by basic loss benefits payable under this act, as described in section 103.

(footnotes omitted).

The section 301(a) restriction involved in both *Donnelly* and *Bond* was the $750.00 threshold requirement specified in subsection (5)(B). *Donnelly* held that the limitations period begins to run on the date of the injury despite the fact that the tort action is abolished until the $750.00 threshold is met. In *Bond*, we overruled *Donnelly* and held that the limitations period does not begin to run until the $750.00 threshold is met. We reasoned in *Bond* that until one of the requirements of section 301(a) is met no cause of action against the third party tortfeasor even exists and to hold that the limitations period begins to run prior to the existence of a cause of action would be unjust and unnecessary.

Unlike *Donnelly* and *Bond* which involved tort actions by injured plaintiffs against third party tortfeasors, the instant case involves actions by injured plaintiffs against their own no-fault insurance carrier. The applicable statute of limitations in the instant case is found in the No-Fault Act at section 106(c). Section 106(c) is set forth in pertinent part as follows:

(c) Time limitations on actions to recover benefits.—

(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

It is clear by reading the language of section 106(c) that the legislature did not intend the limitations period to begin to run on the date of the injury as appellee suggests. Section 106(c) establishes a two year statute of limitations and a four year statute of repose. By creating an ultimate limitation of four years, the legislature obviously contemplated that the two year statute of limitations would begin to run at some point between that ultimate limitation date and the date of the injury. Therefore, the injury could not have been intended to be the triggering event for the limitations period.

Having decided that the limitations period is not triggered by the occurrence of the injury, the task remains to determine at what point the limitations period does begin to run. The cause of action in the instant case is predicated upon an alleged breach of the insurer's contractual duty to pay no-fault benefits. At common law, the statute of limitations in an action for breach of contract does not begin to run until the occurrence of the breach. *A. J. Aberman, Inc. v. Funk Building Corp.*, 278 Pa.Super. 385, 420 A.2d 594 (1980). This is consistent with the general rule that a statute of limitations does not begin to run until the accrual of the cause of action. *Pennsylvania Turnpike Commission*

*v. Atlantic Richfield Company,* 31 Pa.Commonwealth Ct. 212, 375 A.2d 890 (1977), *affirmed* 482 Pa. 615, 394 A.2d 491 (1978). It should be recalled that this was the analytical basis for our opinion in *Bond v. Gallen, supra* in which we held that the statute of limitations in tort actions against third party tortfeasors does not begin until the right to such actions accrues.

■ Section 106(c)(1) of the No-Fault Act provides that the action must be commenced no later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident. "Loss" is defined in the general definition section of the No-Fault Act, section 1009.-103 as follows:

'Loss' means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.

We believe that "loss" as that term is defined in the No-Fault Act must be equated with the common law concept of breach of contract because until such breach occurs, the claimant does not know that he has incurred any economic detriment. Moreover, until a breach has occurred, no cause of action based on contract exists and, as we concluded in *Bond*, to hold that the limitations period begins to run prior to the existence of a cause of action would be unjust and unnecessary.

■ The instant action is not barred by the four year limitations period because the complaint was filed within four years of the accident. It is not clear, however, if the complaint was filed within two years of the alleged breach of insurer's contractual duty to pay no-fault benefits. The issues as to what constitutes breach of insurer's contractual duty to pay no-fault benefits and as to when such breach occurred under the particular facts and circumstances of this case were not considered by the lower court. Accordingly, we must remand in order to allow the lower court to determine these issues.

The order of the lower court is reversed, and the case is remanded for proceedings consistent with this opinion.