448 A.2d 86

**Michael WILLIAMS, Appellant,**

v.

**KEYSTONE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Feb. 1, 1982.

Filed July 16, 1982.

---

James L. Womer, Philadelphia, for appellant.

Mark Robert Bosniak, Philadelphia, for appellee.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

WICKERSHAM, Judge:

The issue in this appeal involves the construction of the statute of limitations provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] In this case, appellant,

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp.1981–82). Hereinafter referred to as the No-Fault Act or the Act.

Michael Williams, instituted an action against appellee, Keystone Insurance Company (hereinafter Keystone), for refusing to provide him with basic loss benefits after his claim for such benefits had been assigned to Keystone under the assigned claims plan of the No-Fault Act.[2] Keystone filed a motion for summary judgment raising a statute of limitations defense, the lower court granted the motion. For the reasons indicated herein, we reverse the order of the lower court.

In *Petraglia v. American Motorists Insurance Company*, 284 Pa.Super. 1, 3, 424 A.2d 1360, 1361 (1981), aff'd per curiam, 498 Pa. 33, 444 A.2d 653 (1982), we stated that:

Summary judgment 'shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Pa.R.Civ.P. 1035(b). Summary judgment can only be granted in the clearest of cases. *See, e.g., Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). Additionally, the evidence must be viewed in the light most favorable to the non-moving party and all doubts must be resolved against the moving party. `See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Just v. Sons of Italy Hall*, 240 Pa.Super. 416, 368 A.2d 308 (1976).

Viewed according to the standards set forth in *Petraglia*, the facts in this case may be summarized as follows.

■ On December 24, 1975, Michael Williams was traveling as a passenger in a pickup truck in the City of Philadelphia when the pickup truck collided with a bus. As a result

2. Section 108 of the No-Fault Act establishes an assigned claims plan under which an assigned claims bureau consisting of all insurers offering no-fault motor vehicle insurance in the Commonwealth is created. The purpose of the assigned claims plan is to provide basic loss benefits for victims or survivors of deceased victims who are not covered by no-fault motor vehicle insurance. Under the assigned claims plan, such claims are assigned to a participating insurer which shall provide basic loss benefits.

of the collision, Williams sustained severe lacerations to his face and scalp, a broken nose and injuries to his right eye, chest and back. On November 28, 1977, Williams' attorney wrote a letter to the assigned claims bureau in which he represented that neither Mr. Williams nor the car in which he was a passenger were insured at the time of the accident, and that he would like to make a claim with the assigned claims bureau for Mr. Williams' medical bills and lost wages.[3] Thereafter, Williams' claim was assigned to Keystone. Keystone refused the claim and this action was commenced on September 11, 1978.

Keystone contends that Williams' cause of action is barred by the statute of limitations provisions set forth in section 106(c)(1) of the No-Fault Act. Section 106(c)(1) provides in pertinent part that:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

Keystone notes that under section 106(c)(1), the limitations period commences when the victim suffers the "loss." "Loss" is defined in section 103 of the No-Fault Act as "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss." Keystone contends that Williams knew on the date of the accident, December 24,

---

3. Keystone points out that Williams did not complete a formal application for basic loss benefits under the assigned claims plan until July 14, 1978. We believe that this is irrelevant, however, because the time limitation for presenting a claim under the assigned claims plan, found at section 108(c)(1) of the Act, only requires the claimant to *notify* the assigned claims bureau of his claim within a specified time. Williams' letter to the assigned claims bureau dated November 28, 1977 constituted such notification. We observe that this notification to the bureau was timely under section 108(c)(1) of the Act.

1975, that he had suffered "loss" as a result of the accident, and, therefore, an action commenced more than two years after that date should be barred.

We cannot accept Keystone's interpretation of the No-Fault Act. In construing the language of the No-Fault Act we are aided by a statement of legislative findings and purposes. The General Assembly found that "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce". 40 P.S. § 1009.102(a)(3). It therefore declared its purpose "to establish . . . a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102(b). Additionally, the Pennsylvania Supreme Court recently stated in *Allstate Insurance Company v. Heffner*, 491 Pa. 447, 455, 421 A.2d 629, 633 (1980), *aff'g* 265 Pa.Super. 181, 401 A.2d 1160 (1979), that:

Historically, the courts of this Commonwealth have routinely followed this spirit and found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy, we should err in favor of coverage for the insured.

We recently considered the issue of when the limitations period set forth in the pertinent portion of section 106(c)(1) commences in *Myers v. USAA Casualty Insurance Company*, 298 Pa.Super. 366, 444 A.2d 1217 (1982). *Myers* involved an action by an injured plaintiff against his own no-fault insurance carrier. In *Myers*, we stated that:

The cause of action in the instant case is predicated upon an alleged breach of the insurer's contractual duty to pay no-fault benefits. At common law, the statute of limitations in an action for breach of contract does not begin to run until the occurrence of the breach. *A. J. Aberman, Inc. v. Funk Building Corp.*, 278 Pa.Super. 385, 420 A.2d 594 (1980). This is consistent with the general rule that a

statute of limitations does not begin to run until the accrual of the cause of action. *Pennsylvania Turnpike Commission v. Atlantic Richfield Company*, 31 Pa.Commonwealth Ct. 212, 375 A.2d 890 (1977), *affirmed* 482 Pa. 615, 394 A.2d 491 (1978). It should be recalled that this was the analytical basis for our opinion in *Bond v. Gallen*, [292 Pa.Super. 207, 437 A.2d 7 (1981)] in which we held that the statute of limitations in tort actions against third party tortfeasors does not begin until the right to such actions accrues.

Section 106(c)(1) of the No-Fault Act provides that the action must be commenced no later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident. "Loss" is defined in the general definition section of the No-Fault Act, section 1009.103 as follows:

> 'Loss' means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.

We believe that "loss" as that term is defined in the No-Fault Act must be equated with the common law concept of breach of contract because until such breach occurs, the claimant does not know that he has incurred any economic detriment. Moreover, until a breach has occurred, no cause of action based on contract exists and, as we concluded in *Bond*, to hold that the limitations period begins to run prior to the existence of a cause of action would be unjust and unnecessary.

At 1221.

Unlike *Myers*, which involved an action against an insurance carrier which owed a contractual duty to the injured plaintiff, the instant case involves an action against an insurance carrier which was assigned the injured plaintiff's claim under the assigned claims plan. Despite this difference, however, we believe that our rationale in *Myers* is equally applicable to this case.

 The cause of action in *Myers* was based on an alleged breach of a duty created by contract, and the cause of action here is based on an alleged breach of a duty created by statute. In *Myers*, we held that the limitation period does not commence until the cause of action accrues, and we reach the same holding now.

We believe that a cause of action against an insurance carrier for failing to pay a claim which was assigned to it under the assigned claims plan does not accrue until the alleged breach of the carrier's statutory duty to pay such a claim occurs. It is evident that no cause of action against Keystone existed on December 24, 1975, the date of the accident, as Keystone suggests. At that time Keystone clearly had not been assigned plaintiff's claim and, therefore, owed plaintiff no duty. Obviously Keystone was not assigned the claim until after Williams notified the bureau on November 28, 1977 that he had an assigned claim! Williams filed the instant action against Keystone on September 11, 1978, less than two years after November 28, 1977, the earliest conceivable date upon which a breach could have occurred. Hence his suit was timely. Accordingly, we reverse the order of the lower court.

Order reversed.