· 452 A.2d 1

Michael TANKLE, Appellant,
v.
PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY
· and
United States of America, Intervenor.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Sept. 10, 1982.

Reargument Denied Nov. 19, 1982.

58

Edward F. Chacker, Philadelphia, for appellant.

Charles W. Craven, Philadelphia, for Prudential, appellee.

Freddi Lipstein, Washington, D.C., for participating party.

Before CERCONE, P.J., WICKERSHAM and VAN der VOORT, JJ.

WICKERSHAM, Judge:

The issues in this appeal involve the application of the Pennsylvania No-fault Motor Vehicle Insurance Act[1] to a

1. Act of July 19, 1974, P.L. 489, No. 176, §§ 101 *et seq.,* 40 P.S. §§ 1009.101 *et seq.*

person on active duty in the United States military service. The United States has also intervened in this appeal in order to assert its interests as the provider of appellant, Michael Tankle's, medical care.

The facts in this case may be summarized as follows. Michael Tankle sustained serious injuries in an automobile accident which occurred in Pennsylvania on August 5, 1975. At the time of the accident, Tankle was on active duty in the United States Navy, and he had a no-fault motor vehicle insurance policy issued by Prudential Property and Casualty Insurance Company (hereinafter Prudential). Tankle's medical expenses resulting from the accident totalled $23,-483.55. In addition, Tankle's wages and allowances during the period which he was unable to serve due to his medical treatment and recuperation amounted to $16,948.75. The United States assumed all of Tankle's medical expenses and paid Tankle his wages and allowances during the period which he was unable to serve.

Tankle submitted a claim to Prudential for no-fault benefits. Prudential refused to pay Tankle's claim, and Tankle filed a complaint in assumpsit against Prudential on October 5, 1977. After the pleadings were closed, both Tankle and Prudential filed motions for summary judgment.[2] On No-

2. The motion for summary judgment filed by Michael Tankle was limited to the issue of liability. Prudential framed its request for summary judgment as follows:

(1) The plaintiff has not sustained a 'net loss' for medical care which has been paid by the United States Government within the meaning of Section 206 of the Pennsylvania No-Fault Motor Vehicle Insurance Act, and defendant is not obliged therefore to make a second payment of said medical expenses to the plaintiff.

(2) The plaintiff has not sustained a 'net loss' for periods of disability where his salary as a member of the United States Navy has contained within the meaning of Section 206 of the Pennsylvania No-Fault Motor Vehicle Insurance Act, and defendant is not obliged therefore to make a second payment of said salary to the plaintiff.

vember 8, 1979, the lower court entered an order sustaining Prudential's motion for summary judgment and denying Tankle's motion for summary judgment. This appeal followed.

In his complaint against Prudential, Tankle sought judgment for his medical expenses and for his wages and allowances for the period during which he was unable to serve. The lower court determined that Tankle was not entitled to judgment on either ground. The court below reasoned that because Tankle received free medical care as well as wages during the period of his disability he suffered no "net loss" as defined by the No-fault Act in section 206. The statute provides:

**(a) General.**—Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

40 P.S. § 1009.206(a) (footnotes omitted).

The Commonwealth Court decided an analogous case in *Erie Insurance Exchange v. Sheppard,* 39 Pa.Commw. 30, 394 A.2d 1075 (1978). In *Erie Insurance Exchange* a civilian

(3) If the court should determine that points one and two should be resolved in favor of the plaintiff then partial Summary Judgment should be granted in favor of the Defendant and against the plaintiff for all benefits under the Pennsylvania No-Fault Motorist Insurance Act claimed as incurred, or owing, in periods prior to the two year period which elapsed prior to the institution of suit.

government employee sought recovery of sick pay as here Tankle seeks recovery of wages. The Commonwealth Court held that sick pay given to a government employee was not deductible under section 206(a) of the Act. In reaching this result the court held that the words "all other benefits . . . from any government" take their meaning from and are restricted by the enumerated benefits such as social security, workmen's compensation and temporary disability insurance. Sick pay was distinguished from the listed benefits by its exhaustability: social security is a lifetime benefit, while sick pay will run out.

The distinction between exhaustible and lifetime benefits was critical to the Third Circuit's decision in *Heusle v. National Mutual Insurance Company*, 628 F.2d 833 (3d Cir. 1980). The plaintiff in *Heusle* was on active duty with the U.S. Coast Guard when she was injured in an automobile accident. Heusle sued to recover her medical expenses, most of which were paid by the government. The district court denied Heusle's claim on the ground that payment of medical expenses is a benefit deductible under section 206(a). The court of appeals affirmed, noting that the payment of medical expenses was an inexhaustible benefit. *Erie Insurance Exchange* was distinguished because the sick pay benefits were exhaustible.

■ The rationale of both *Erie Insurance Exchange* and *Heusle* is that inexhaustible benefits such as payment of medical expenses are deductible under section 206(a) while exhaustible benefits such as sick pay are not. Following this rationale we hold that Tankle cannot recover his medical expenses which were paid by the government. Tankle could have had medical bills paid without limit and this benefit should be deducted from the loss Tankle suffered. *See Heusle, supra.* The trial court correctly granted summary judgment against Tankle on this issue.

■ Yet Tankle may have suffered a work loss. He contends, without citing supporting authority, that the wages he received while disabled will be subtracted from his

retirement pay. If this is true, the wages are not an inexhaustible benefit deductible under section 206(a) of the No-fault Act. Summary judgment against Tankle on the work loss issue was incorrectly granted.

Tankle also argues that the two year statute of limitations of the Act does not bar his action even though suit was filed more than two years from the date of the accident. The No-fault Act places varying time limitations on actions to recover benefits in section 106(c).[3] Section 106(c)(1) provides:

>(1) *If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.* If no-fault benefits

---

**3.** Two recent decisions of this court are distinguishable because both involve application of different portions of section 106(c). In *Sachritz v. Pennsylvania National Mutual Casualty Insurance Company,* 293 Pa.Super. 483, 439 A.2d 678 (1981) the court was called upon to interpret the following portion of § 106(c)(1): "If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits ... may be commenced not later than two years after the last payment of benefits." 40 P.S. § 1009.106(c)(1). Because the claimant in *Sachritz* had been paid some work loss benefits, she could not bring a suit for post-mortem work loss benefits more than two years from receipt of the last benefit payment. *Sachritz, supra,* 293 Pa.Superior Ct. at 485, 439 A.2d at 679. In Tankle's case, no-fault benefits have not been paid; therefore, the portion of § 106(c)(1) discussed in *Sachritz* is not applicable here.

Nor is *Guiton v. Pennsylvania National Mutual Casualty Insurance Company,* 301 Pa.Super. 146, 447 A.2d 284 (1982), dispositive of the case before us. In *Guiton* the insurer argued that § 106(c)(2), which provides: "If survivor's benefits have been paid to any survivor, an action for further survivor's benefits ... may be commenced not later than two years after the last payment of benefits.", barred a survivor's action for *work loss* benefits when the survivor had received *survivor's benefits* more than two years before suing for work loss benefits. The court held that § 106(c)(2), which governs suits for further *survivor's* benefits cannot preclude a suit for *work loss* benefits. Tankle survived the accident therefore no survivors benefits were paid; accordingly, the portion of § 106(c)(2) considered in *Guiton* is inapplicable here.

have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits.

40 P.S. § 1009.106(c)(1) (emphasis added).

In this case, Tankle has not received no-fault benefits for his alleged loss, which certainly arose otherwise than from death. It is clear, therefore, that he could commence an action within two years after he knew or should have known that the loss was caused by the accident, but in no event could he sue more than four years after the accident. *Id.*

■ A recent case, *Myers v. USAA Casualty Insurance Company*, 298 Pa.Super. 366, 444 A.2d 1217 (1982), discussed the meaning of "loss" in the context of section 106(c)(1). In *Myers* the court said: "We believe that 'loss' as that term is defined in the No-Fault Act must be equated with the common law concept of breach of contract because until such breach occurs, the claimant does not know that he has incurred any economic detriment." *Id.* 298 at 374, 444 A.2d at 1221. Here, Tankle alleges that Prudential refused to pay his claim on June 21, 1977. Under the *Myers* rule Tankle then had two years from that date to start suit. Tankle filed his complaint on October 5, 1977, well within two years from June 21, 1977.

■ The United States intervened in this appeal and argues that it should be entitled to recover from Prudential the medical expenses that it paid on Michael Tankle's behalf. We believe that the issues raised by the United States were fully considered and correctly decided by the United States Court of Appeals for the Third Circuit in *Heusle v. National Mutual Insurance Company, supra.* In *Heusle* the court held that the United States had no basis in federal law or the No-fault Act itself for recovery of medical expenses paid on behalf of a member of the armed forces. *Id.* at 836–39. Further discussion by our court is not warranted.

Order granting summary judgment against Tankle as to recovery of medical expenses is affirmed; order granting summary judgment against Tankle as to recovery of work loss is reversed. The case is remanded for proceedings consistent with this opinion.

Order affirmed in part and reversed in part.