Warner BELL

v.

UNITED STATES of America, DEPARTMENT OF LABOR

and

The Travelers Insurance Company

and

Wistar Institute

and

John J. Callahan, Jr.

Civ. A. No. 82–3327.

United States District Court, E.D. Pennsylvania.

March 25, 1983.

Larry Jackson, Philadelphia, Pa., for plaintiff.

Gladys Buck, Jeffrey A. Less, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

The facts in this case are not in dispute and have been agreed upon by stipulation. On July 2, 1981 plaintiff Warner Bell ("Bell") was injured in a two-vehicle accident. At the time of the accident he was employed by the United States Department of Defense—Personnel Support Center as a file clerk and acting within the scope of his employment. He was a passenger in a government-owned vehicle which collided with a vehicle owned by First Pennsylvania Auto Leasing and operated by John J. Callahan, Jr. who was employed by Wistar Institute of Philadelphia, Pennsylvania.

The vehicle in which Bell was a passenger was not registered in Pennsylvania nor was it insured under the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, §§ 101 *et seq.,* 40 P.S. §§ 1009.101 *et seq.* ("Act"). Bell has been receiving federal workmen's com-

pensation under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101, *et seq.* At the time of the accident the plaintiff did not own a motor vehicle nor did he reside in the same household with an owner of a motor vehicle. The plaintiff was not a named insured in any policy of basic loss insurance under the Act.

In April 1982 Bell filed in the Court of Common Pleas for Philadelphia County a Petition for Designation of an Insurer requesting the court to compel the Assigned Claims Plan ("Plan") to assign his claim for no-fault benefits to a servicing carrier under the Plan. The Plan answered that the plaintiff was not entitled to benefits from the Plan under the Act.

By a May 28, 1982 order the Honorable Charles A. Lord of Common Pleas Court granted the plaintiff's petition, ordering the Plan to assign Bell's claim to a servicing carrier. *Warner Bell v. Pennsylvania Assigned Claims Plan,* (C.P.Phila. NO. 3078, April Term, 1982). The court relied on a "related case," *Belinda Cook v. Pennsylvania Assigned Claims Plan and SEPTA* (C.P. Phila. NO. 2289, December Term, 1981), as the basis of its opinion. As a result of the order, the Plan assigned Bell's claim to defendant The Travelers Insurance Company ("Travelers"). Travelers denied plaintiff's claim for benefits by letter dated July 6, 1982 from Randy P. Brungard, Assistant Supervisor. That letter stated that Travelers incorporated all the defenses of the Plan and that Bell should be seeking benefits through the United States Government. The letter further stated that since Bell is eligible for "Worker's" Compensation benefits, there would be no money due Bell once

a set-off was made against the collateral source. Travelers also denied liability through its attorney by letter dated July 22, 1982 in which it claimed that the vehicle in which Bell was a passenger at the time of the accident was not a "motor vehicle" within the meaning of the Act and therefore the Act did not require payment under the Plan.

Bell brought the present action in this court in August 1982 seeking declaratory and injunctive relief from the United States Department of Labor and Travelers, and monetary damages from Wistar Institute and John J. Callahan, Jr. By Memorandum Opinion and Order dated December 29, 1982 this court, upon motions by the defendants, dismissed defendants Wistar and Callahan for lack of subject matter jurisdiction. We also dismissed the Department of Labor but declared that it is entitled to satisfaction of a statutory lien on any recovery made by plaintiff from tortfeasors Callahan and Wistar, adopting the reasoning in *Lorenzetti v. United States,* 550 F.Supp. 997 (E.D. Pa.1982). The motion to dismiss by defendant Travelers was denied because there is diversity of citizenship between the plaintiff and Travelers.

Presently before the court are cross motions of Bell and Travelers for summary judgment. As stated earlier, none of the facts are in dispute, only legal issues as to the liability of Travelers under the circumstances remain to be resolved.

As a threshold matter Travelers denies that benefits are due under the Plan pursuant to Section 204(a)(5) of the No-Fault Act, 40 P.S. § 1009.204(a)(5)[1] Instead, it

---

1. Section 204(a) provides, in its entirety:

§ 1009.204 Source of basic restoration benefits

(a) Applicable security.—The security for the payment of basic loss benefits applicable to an injury to:

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if

none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a

argues, the proper source of benefits is Section 204(a)(4) of the Act, 40 P.S. § 1009.-204(a)(4). Travelers argues that the Act applies to losses arising out of the "maintenance or use of a motor vehicle." Because the vehicle was owned by the federal government, defendant argues it was not a "motor vehicle" within the meaning of the Act.[2] A "motor vehicle" is defined by the Act as:

> "Motor vehicle" means a vehicle of a kind required to be registered under the act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code.[2] 40 P.S. § 1009.103

Footnote 2 refers to 75 P.S. § 101 et seq., which is the entire Vehicle Code ("The Code"). Defendant claims that "a vehicle of a kind required to be registered under ... The Vehicle Code" requires a determination as to which vehicles must or must not be registered in Pennsylvania.

The plaintiff argues that the definition under the No-Fault Act using the language "of a kind required to be registered" means that the only determination required is whether or not the vehicle is generically the variety of vehicle that must be registered under the Code. For this determination, plaintiff argues, a "cursory glance" of the requirements under the Code leads to a conclusion that the 1980 Dodge truck in which the plaintiff was a passenger is a "motor vehicle" under the Code. For this conclusion, the plaintiff refers the court to the Code's definition of "vehicle" which is:

> Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks. 75 Pa.C.S.A. § 102.

The divergence in interpretation, then, is the meaning to be given "of a kind." Plaintiff argues that to be given the interpretation used by the defendant, the Act would be written "a vehicle required to be registered" rather than "a vehicle of a kind required to be registered." The recorded legislative history of the Act sheds no light on this question. While the reading given by the defendant is thought-provoking, this court determines that it is plaintiff's reading of the language which must prevail for the reasons that follow.

The title of the No-Fault Act includes, "An Act providing for a compensation system for persons injured in motor vehicle accidents; requiring insurance for all motor vehicles required to be registered in Pennsylvania...." 1974, July 19, P.L. 489, No. 176, 40 P.S. § 1009.101. Under the Statutory Construction Act of 1972 in Pennsylvania "[t]he title and preamble of a statute may be considered in the construction thereof." 1 Pa.C.S.A. § 1924. The language in the title supports the plaintiff's reading of the Act since the legislature presumably would have used identical language in the title and the definition section of the Act if it intended the same meaning. It is the defendant who is attempting to re-write the statute by eliminating the words "of a kind" from the definition section.

The defendant could, of course, be correct in its argument that a United States vehicle is not included in the mandatory registration of automobiles in Pennsylvania. No federal law is abrogated, however, by simply concluding that the truck in which Bell was a passenger is a "motor vehicle" within the meaning of the Act. In fact, the No-Fault Act addressed the effect of the Act on governmental entities in Section 104(c) of the Act which states:

> (c) Obligated government.—A government may provide security with respect to any *motor vehicle* owned or operated by it by lawfully obligating itself to pay

motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and
(5) any other individual is the applicable assigned claims plan.
40 P.S. § 1009–204(a).

**2.** The defendant argues that once we have determined that the plaintiff was not an occupant of a "motor vehicle" as defined by the Act, then under 204(a)(4) he was "an individual who is *not ... the ... occupant of a motor vehicle* involved in an accident" and therefore the proper source for benefits is the security covering the car driven by Callahan. 40 P.S. § 1009.204(a)(4) (emphasis supplied).

basic restoration benefits in accordance with this act, and such added restoration benefits as are specified in the undertaking. 40 P.S. § 1009.104(c) (emphasis supplied).

If this court were to accept the defendant's argument that a vehicle is not a "motor vehicle" when it is not required to be registered in Pennsylvania, then the use of the term "motor vehicle" in the above-referenced section would make no sense. It is on this section of the Act that federal law operates by reason of the Supremacy Clause,[3] rather than the definition section, as argued by the defendant.

We find plaintiff's analysis of the Vehicle Code exceptions to the registration requirements to be cogent. A partial list of the exempted vehicles is helpful in this discussion:

§ 1302. Vehicles exempt from registration

(a) General rule.—The following types of vehicles are exempt from registration:

(1) Any vehicle used in conformance with the provisions of this chapter relating to dealers, persons registered under any of the miscellaneous motor vehicle business classes or nonresidents.

(2) Any implement of husbandry or trailer determined by the department to be used exclusively for agricultural operations and only incidentally operated upon highways.

.    .    .    .    .

(3) Any self-propelled golf cart used for the transportation of persons engaged in the game of golf while crossing any public highway during any game of golf.

(4) Any vehicle moved by special permit as provided for in sections 4965 (relating to single permits for multiple highway crossings), 4966 (relating to permit for movement of quarry equipment), and 4970(a) (relating to permit for movement of construction equipment).

(5) Any vehicle registered and displaying plates issued in a foreign country by the armed forces of the United States for a period of 45 days from the date of the return of the owner to the United States.

(6) Any vehicle owned by a resident legally required to be registered in another state based and used principally outside of the Commonwealth.

.    .    .    .    .

75 Pa.C.S.A. § 1302(a).[4]

Although the list contains certain *kinds* of vehicles which need not be registered because of their customary use, it also contains exemptions based on the use to which the owner puts the vehicle. The 1980 Dodge truck owned by the government is not the *kind* of vehicle which would be exempt due to its use.

The conclusion that "motor vehicle" has the generic meaning of "vehicle" used by the Code does not end the inquiry into what benefits are due. It simply means that because none of the sources of basic restoration benefits under Sections 204(a)(1)–(4) apply to the facts presented by this case, Section 204(a)(5) is triggered, thereby making the Plan the source of whatever benefits are due, if any. Shrager, *The Pennsylvania No-Fault Motor Vehicle Insurance Act* § 1:15.3.

■ The defendant next contends that even if the plaintiff may look to the Plan, and therefore Travelers, for benefits, he is still foreclosed from recovery because FECA compensation is his exclusive remedy. Plaintiff argues that he is due the difference between the FECA benefits he

---

**3.** Federal law provides:

§ 101–38.202 Registration and inspection outside the District of Columbia.

Motor vehicles acquired for official purposes and regularly housed outside the District of Columbia need not be registered in the States, territories, or possessions in which they are primarily used, except that motor vehicles exempted under Subpart 101–38.6 shall be registered and inspected in accordance with the laws of the State, territory, or possession involved.

Title 41 CFR, Chapter 101, Subpart G, § 101–38.202.

**4.** Plaintiff's analysis is useful in spite of his use of the exemptions as they existed prior to their amendment.

has been receiving and no-fault benefits payable under the Act.[5] Both parties rely on *Wagner v. National Indemnity Company,* 492 Pa. 154, 422 A.2d 1061 (1980) (hereinafter referred to as *Wagner I*) as dispositive of the issue.

In *Wagner I* the estate of a decedent who had been killed while operating a company-owned tractor-trailer in the scope of his employment attempted to collect no-fault benefits from the employer's insurance carrier. The decedent was not himself insured by a no-fault carrier. The decedent's family was receiving benefits pursuant to the Workmen's Compensation Act, (Act of December 5, 1974, P.L. 782, No. 263, 77 P.S. §§ 1, *et seq.*) and sought to obtain the difference between the Workmen's Compensation benefits and "survivor's benefits" and decedent's "work loss benefits" as provided under the No-Fault Act. 422 A.2d at 1063. The court was asked to determine the effect of Workmen's Compensation on a recovery from the employer's insurance carrier. The court held that no benefits could be recovered under Section 204(a)(1) of the No-Fault Act from "the employer's no-fault carrier because of the exclusivity section of workmen's compensation...."[6] *Id.* at 1067. The question arises as to the precedential value of that part of the opinion in which the court stated that "none of Section 204(a)(2)–(5) applies to the instant case." *Id.* at 1068. The court stated earlier that should Section 204(a)(2)–(5) apply "[t]he injured employee may, if applicable, proceed against any of the applicable security...." *Id.*

The defendant argues that the court's ruling that Section 204(a)(2)–(5) was inapplicable in *Wagner I* requires a determination by this court that Section 204(a)(5) is inapplicable in the case *sub judice.* This court reads *Wagner I* to mean that recovery

---

5. Section 206 of the No-Fault Act provides:
   ... Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insured, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss. 40 P.S. § 1009.206(a) (Supp.1979–80).
   Although this court is of the opinion that Section 108(a)(3) must be considered in this case, the result is the same with regard to the relationship between workmen's compensation benefits and No-Fault benefits.
   Section 108(a)(3) provides:
   § 1009.108 Assigned Claims Plan
      (a) General.—

   . . . . .

   (3) If an individual receives basic loss benefits through the assigned claims plan for any reason other than because of the financial inability of an obligor to fulfill its obligation, all benefits or advantages that such individual receives or is entitled to receive as a result of such injury, other than life insurance benefits or benefits by way of succession at death or in discharge of familial obligations of support, shall be subtracted from loss in calculating net loss.
   40 P.S. § 1009.108(a)(3).

6. Section 303 of the Workmen's Compensation Act provides:
   "The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death ... or occupational disease...". As amended, Act of December 5, 1974, P.L. 782, No. 263, § 6, 77 P.S. § 481(a) (Supp.1979–80).
   The parallel subsection under the Federal Employees' Compensation Act is:
   (c) The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute....
   5 U.S.C. § 8116(c).

is possible [7] under the No-Fault Act, even when benefits are payable under the Workmen's Compensation Act, under appropriate circumstances. The court could have concluded that Section 204(a)(2)–(5) was inapplicable in the case before it simply because the defendant in the suit was the employer's insurance company, bringing the action under Section 204(a)(1). As stated earlier, Section 204(a)(5) is not triggered if one of the other sections applies. However, two common pleas court opinions after *Wagner I* cast some doubt on this court's reading of the case.

In *Wagner v. The Pennsylvania Assigned Claims Plan,* (C.P. Dauphin Co., No. 5331, Sept. 1978) (hereinafter referred to as *Wagner II*), the administratrix of the estate sought a declaratory judgment that an individual injured in a one vehicle accident during the course of employment who does not have his own no-fault insurance policy is entitled to recover against the Plan. *Wagner I* had determined that no recovery was possible against the employer's carrier due to the receipt of Workmen's Compensation benefits. The court first noted that "*Wagner's* conclusion regarding Section 204(a)(5) [being inapplicable] is dicta." Slip op. at 4–5. It went on to conclude however, that in light of the Pennsylvania Supreme Court's refusal to recognize an argument that the No-Fault Act carved out an exception to the exclusive remedy provided in Section 303 of the Workmen's Compensation Act, recovery from the assigned claims plan was barred. Slip op. at 6–7. The court entered judgment for the Plan.

In *Mumma v. Pennsylvania Assigned Claims Plan,* (C.P. Dauphin Co., No. 3388, Sept. 1981), the administratrix of her husband's estate who was in the process of pursuing a workmen's compensation claim sought to obtain benefits under the Plan. The decedent had been killed in an accident while driving his employer's truck in the course of his employment. The decedent maintained no no-fault insurance. The court, on *en banc* review, determined that

Section 303 of the Workmen's Compensation Act is the exclusive remedy of an injured employee and affirmed the court's decision to sustain the Plan's preliminary objections.

A number of Pennsylvania Superior Court cases need to be addressed as well. In *Adams v. Nationwide Insurance Co.,* 285 Pa.Super. 79, 426 A.2d 1150 (1981), the plaintiff, injured while driving his own automobile within the scope of his employment, brought suit against his own insurance carrier to obtain the difference between his actual wage loss and benefits conferred on him under the Workmen's Compensation Act. The Superior Court determined that the facts were "clearly distinguishable" from *Wagner I* and reversed the lower court's judgment against the plaintiff on the pleadings. 426 A.2d at 1151. The court determined that there would be no conflict between the No-Fault Act and Workmen's Compensation Act under the facts since it would not result in "establish[ing] Standard Motor Products' (appellant's employer) liability over and above its liability under the Workmen's Compensation Act." 426 A.2d at 1152.

In *Augostine v. Pennsylvania National Mutual Casualty Insurance Co.,* 293 Pa.Super. 50, 437 A.2d 985 (1981), the court determined that the plaintiff may recover from his own carrier where he "was injured while alighting from one of his employer's trucks in the course of his employment." 437 A.2d at 985. The court read *Wagner I* narrowly and limited it to its facts, "i.e., where the driver carries no insurance of his own on his own vehicle and no other vehicle is involved in the injury-producing accident," the employee would be limited to workmen's compensation benefits. 437 A.2d at 987.

The later Superior Court cases of *Motley v. State Farm Mutual Automobile Insurance Co.,* 303 Pa.Super. 120, 449 A.2d 607 (1982) and *Boothman v. Prudential Property and Casualty Insurance Co.,* —— Pa.Super. ——, 450 A.2d 139 (1982), support the contention that an insured may recover

---

**7.** The court stated that "[s]hould the employee recover no-fault benefits, workmen's compensation benefits must first be deducted from any no-fault benefits to be paid." *Id.* at 1068.

from his own carrier, subject to appropriate deductions due to workmen's compensation benefits, where he is injured in a motor vehicle accident in the scope of his employment. The employee could not, however, recover from the employer's no-fault carrier.

All of these Superior Court cases were the decisional law in Pennsylvania when *Wagner II* and *Mumma* were decided. *Wagner II*, in fact, distinguished *Adams* and *Augustine* and determined that the administratrix could not claim against the Plan where no insurance carrier was involved other than the employer's carrier. Both *Wagner II* and *Mumma* are on appeal to the Superior Court. Regardless of this court's view of the results in *Wagner II* and *Mumma,* they are distinguishable. An insurance carrier was involved in each case but no claim could be brought against it because it was the employer's carrier. In the case *sub judice* no employer no-fault carrier is involved. The Superior Court, in narrowly construing the holding of *Wagner I,* indicated that the concern of the Pennsylvania Supreme Court was the possibility of establishing the liability of an employer beyond its liability under the Workmen's Compensation Act. Such a situation would contravene the intention of the legislature as exhibited by the exclusivity section of the Workmen's Compensation Act. However, by allowing recovery against an employee's own insurer or, in this case, the Assigned Claims Plan, the employer's own liability is not brought into play. *Wagner I* itself does not prohibit such a result and the result is consistent with the policy of the No-Fault Act to "assure[ ] every victim payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss. . . ." 40 P.S. § 1009.-102(a)(6)(A).

Travelers therefore is obligated to pay the difference between the FECA benefits that plaintiff began receiving on September 6, 1981 as work loss benefits and no-fault benefits due under the No-Fault Act taking into account the income tax savings as required under Section 206(b) of the Act. 40 P.S. § 1009.206(b).[8]

▮ Having concluded that plaintiff is not foreclosed from recovering from Travelers under the Assigned Claims Plan due to his receipt of FECA benefits, this court must determine what items of loss are payable. Relying on Section 106(a)(3) of the Act,[9] plaintiff contends that, although he receives benefits through FECA, because they are often paid months after they have been submitted to the government, Travelers must make payment for those items. Plaintiff argues that Travelers would then be subrogated to his right to receive FECA benefits for those items Travelers paid on behalf of the federal government.

Travelers denies that it has the responsibility to make payment for bills for which the federal government is responsible under FECA. Relying on Section 108(a)(3) of the Act,[10] Travelers argues that any benefits to which plaintiff is entitled under FECA may be subtracted from any No-Fault benefits Travelers is required to pay at the time of payment.

A reading of the entire Act reveals that defendant's reliance on Section 108(a)(3) is misplaced. That section is simply the method for calculating "net loss" when the Assigned Claims Plan is the source of No-Fault benefits for reasons other than the

---

**8.** A recent Superior Court opinion, brought to the attention of this court by the defendant, supports this result. *See, Borrell v. Continental Casualty Co., et al.* —— Pa.Super. ——, 456 A.2d 1074 (1983).

**9.** That section provides:
§ 1009.106 Payment of Claims for no-fault benefits
(a) In general.—

. . . . .

(3) A claim for no-fault benefits shall be paid without deduction for the benefits or advantages which are to be subtracted from loss in calculating net loss if such benefits or advantages have not been paid or provided to such claimant prior to the date the no-fault benefits are overdue or the no-fault benefits claim is paid. The obligor is thereupon entitled to recover reimbursemnt (sic) from the person obligated to pay or provide such benefits or advantages or from the claimant who actually receives them.
40 P.S. § 1009.106(a)(3).

**10.** See footnote 5 *supra* for the text of Section 108(a)(3).

financial inability of the obligor. It is the exception to the general rule for determining "net loss" under Section 206 of the Act.

If this court were to read Section 108(a)(3) as suggested by the defendant, we would be violating the Pennsylvania Supreme Court's determination that "[u]nder Section 108(b), insurers are assigned to compensate motor vehicle accident victims for whom insurance is not carried *as if* a policy of basic loss insurance had been issued...." *Tubner v. State Farm Mutual Insurance Co.*, 496 Pa. 215, 436 A.2d 621, 622 (1981) (emphasis in original). Therefore, pursuant to Section 106(a)(3) plaintiff may submit to Travelers his medical bills and other allowable expenses as well as his work loss verifications as they accrue. If those items remain unpaid by the office of Worker's Compensation Programs at the time the plaintiff's no-fault benefits become overdue under the Act,[11] Travelers is obligated to pay them to plaintiff. Travelers would then be subrogated to the plaintiff's right to receive FECA benefits. This court recognizes the awkwardness and extraordinary paperwork which may result from such a scheme. However, the legislature apparently determined that the policy of prompt payment to the victim outweighed the potential confusion created by such a scheme.

Interest at the rate of eighteen percent (18%) per annum is payable on overdue payments. 40 P.S. § 1009.106(a)(2). Because benefits become overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, interest in this case begins to run thirty days after plaintiff submitted reasonable proof to Travelers. The plaintiff apparently submitted such proof on October 1, 1982 in response to a discovery request. Therefore, interest begins to run as of November 1, 1982.

■ Another issue to be resolved in this matter is the effect the Federal government's lien has on Traveler's obligation to the plaintiff. The plaintiff contends that Travelers must satisfy the FECA lien asserted by the United States upon his recovery from third party tortfeasors to the extent such a lien depletes the plaintiff's recovery. The defendant argues that such a determination need not be made at this time since the lien has not yet been asserted and there may be no third party recovery at all. This court has the ability and responsibility to determine the question at this time in this declaratory judgment action. While it is possible that the plaintiff will obtain no recovery in his state court action, this court is asked to determine the rights and obligations of Bell and Travelers in their relationship as it stands today. The lien of the United States government was established by this court in the December 29, 1982 memorandum opinion. There is no doubt as to its existence. How it affects the plaintiff's relationship with the defendant is all that needs to be resolved at this time.

In its argument on the merits of this issue, the defendant contends that the plaintiff is essentially asserting incorrectly that the federal benefits cannot be deducted under the No-Fault Act. The plaintiff argues that the money that the United States will recover upon assertion of its lien is the non-economic loss he will recover from the third-party tortfeasors. Therefore, plaintiff argues, if this court allows Travelers to deduct the FECA benefits plaintiff receives as required by Section 206(a) or Section 108(a)(3), Travelers will be the indirect beneficiary of the government's right to subrogation in conflict with Section 111(a)(1)(A) of the Act which provides:

(1) Except as provided in paragraphs (2) and (3) of this subsection, an obligor:

(A) does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation to the proceeds of a victim's cause of action for noneconomic detriment.... 40 P.S. § 1009.111(a)(1)(A).

The parties rely on the cases in which courts have been required to determine

---

11. Generally, no-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of submission of "reasonable proof of the fact and amount of loss sustained...." 40 P.S. § 1009.106(a)(2).

whether or not benefits received are "exhaustible" as that term has been used in interpreting Section 206(a) of the Act. If benefits are exhaustible then they are not deductible under the section. *Tankle v. Prudential Property and Casualty Insurance Co.,* —— Pa.Super. ——, 452 A.2d 1, 3 (1982). Unfortunately, determining whether or not they are exhaustible through the caselaw is of no practical use. Benefits are exhaustible if the statutory scheme provides that they are. *See Heusle v. National Mutual Insurance Co.,* 628 F.2d 833, 839–840 (3d Cir.1980). In the case *sub judice* the FECA benefits are payable as long as there is total disability under 5 U.S.C. § 8105. There is no date certain or amount certain at which point the benefits terminate. They are therefore inexhaustible. If they are inexhaustible they are deductible. *Id.*

The plaintiff would have the court characterize the benefits as exhaustible to reach the result that they are not deductible under Section 206. The defendant would like the reverse characterization. The precedent does not allow for result-oriented logic such as the parties suggest. Neither the *Tankle* nor the *Heusle* court dealt with benefits that are inexhaustible in the context of the granting to the federal government the right of subrogation to any third-party recovery. The factual setting of the present case appears to be without precedent. A literal application of the No-Fault Act requires this court to determine that Travelers is not liable for the amount of money the United States government ultimately recovers upon assertion of its lien. Section 206(a) requires calculation of net loss by subtracting "... all ... benefits ... received by *or available to* an individual because of the injury from any government...." Section 108(a)(3) requires subtracting "all benefits or advantages that such individual receives or *is entitled to receive* as a result of such injury..." to calculate net loss. Neither section calls for calculation solely on the basis of the amount of money actually received. Such a result appears harsh. Yet the No-Fault Act is concerned with providing adequate basic loss benefits which are the victim's economic rather than non-economic losses. To the extent that the federal government is able to recover its expended funds from plaintiff's non-economic loss recovery in his third-party suit, the net result is not the reduction of plaintiff's global recovery as provided under the Act. A different result would appear possible only by a change in the legislation. We therefore must conclude that Travelers may deduct the FECA benefits in calculating net loss and is not obligated to satisfy a FECA lien asserted by the United States if such a lien is asserted.

Finally, this court must determine whether or not plaintiff is entitled to attorney's fees. Section 107 provides that the claimant's attorney's fees are to be paid for by the obligor under the following circumstances:

(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

40 P.S. § 1009.107(3).

■ "[T]he absence of judicial precedent will not invariably provide an insurance carrier with 'reasonable foundation' for denying a claim under the Act. On the other hand, where a non-frivolous issue is one of first impression ... this fact is entitled to substantial weight in determining whether an insurer's denial of a claim is 'without reasonable foundation.'" *Hayes v. Erie Insurance Exchange,* 261 Pa.Super. 171, 395 A.2d 1370, 1373 (1978).

■ None of the defenses presented by Travelers could be called frivolous. The determination of the meaning of "motor vehicles" under the Act required a development of the legislative history and a comparison of the Act with the Vehicle Code. The argument contained case law that supported the defendant's position.

The argument that workmen's compensation benefits are plaintiff's exclusive remedy had not been decided by an appellate Pennsylvania court at the time of the writing of the brief. The recent Superior Court

decision, brought to the attention of this court by the defendant, undercut the defendant's argument. *Borrell v. Continental Casualty Co., et al.* —— Pa.Super. ——, 456 A.2d 1074 (1983). The argument, at the time, however, was certainly non-frivolous.

Finally, plaintiff argues that Travelers' denial of his entitlement to any benefits from it was not based in fact, pointing to the deposition of Travelers' Assistant Claims Supervisors. It is apparent that the claim was rejected based on advice of counsel who presented the same non-frivolous defenses at that time as presented to this court. Travelers has not acted "without reasonable" foundation on any part of plaintiff's claim. Plaintiff's request for attorney's fees must be denied.

### ORDER

The motion of the plaintiff Warner Bell for summary judgment is GRANTED in part and DENIED in part. The motion of the defendant The Travelers Insurance Company for summary judgment is GRANTED in part and DENIED in part.

Judgment is entered in favor of the plaintiff and against the defendant in the amount of $1,754.18 for net work loss sustained from September 6, 1981 to January 26, 1983.

Judgment is entered in favor of the plaintiff and against the defendant for $3,013.00 in medical bills not yet paid by the federal government subject to Travelers' right of subrogation when plaintiff is paid such benefits. The amount of $3,013.00 shall represent the following unpaid medical bills:

| | |
|---|---|
| William Burch, M.D. | $ 55.00 |
| Louis Yellin | 190.00 |
| | 175.00 |
| Graduate Hospital | 138.00 |
| B.C.R.S.G. Anesthesia | 216.00 |
| Paul Cohen, D.D.S. | 2239.00 |

Defendant shall pay interest of eighteen percent (18%) per annum accruing upon the above wage loss and medical bills from November 1, 1982 until the time of payment.

It is declared that defendant shall pay the plaintiff his net work loss consisting of his weekly loss of earnings less tax advantages minus compensation benefits paid under the Federal Employee Compensation Act. (FECA).

The defendant shall accept reasonable proof of the fact and amount of plaintiff's items of loss and make payment of plaintiff's work loss and allowable expense without deduction of any FECA benefits payable to plaintiff which remain unpaid after thirty days of submission of proof to defendant.

The defendant shall be subrogated to the plaintiff's right to receive FECA benefits on all items payable under FECA but paid by the defendant due to the above thirty day requirement.

The defendant shall not be obligated to reimburse the plaintiff for any amount recovered by the United States as a result of its statutory lien.

The plaintiff's request for attorney's fees is DENIED.

IT IS SO ORDERED.