Morris Allen APPLEBAUM, Administrator of the Estate of David Marc Applebaum, and all others similarly situated, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. A. No. 84–0686.

United States District Court, M.D. Pennsylvania.

Jan. 31, 1986.

Neil J. Rovner, Angino & Rovner, P.C., Harrisburg, Pa. for plaintiff.

Robert E. Kelly, Jr., Dwight Reginald Whitt, Duane, Morris & Heckscher, Harrisburg, Pa., Reginald Whitt, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

The parties have filed cross-motions for summary judgment. Plaintiff, Morris Allen Applebaum (Applebaum), administrator of the estate of David Marc Applebaum, filed this action in the Court of Common Pleas of Dauphin County, Pennsylvania, against defendant, State Farm Mutual Automobile Insurance Co. (State Farm), to recover work loss benefits due his decedent under the now repealed Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, § 101–701. State Farm was decedent's no-fault insurer. Plaintiff also sought to represent a class of "all others similarly situated." The defendant removed the action to this court on the basis of diversity of citizenship. It has moved for summary judgment on Applebaum's individual claim, contend-ing that the claim is barred by: (1) the statute of limitations or statute of repose set forth in the No-fault Act; (2) the doctrine of *lis pendens* because Applebaum had filed a previous action for the same claim in the Court of Common Pleas of Philadelphia County; and (3) a release previously executed by decedent's survivor and approved by Applebaum as administrator of decedent's estate. Plaintiff contends that none of these arguments are applicable to him and he is entitled to summary judgment not only on his own claim but also on the claims of the class he purports to represent.

### II. *Factual Background.*

From the pleadings, exhibits and affidavits submitted by both parties in connection with the motions, the following is the background of this litigation. Plaintiff's decedent, David Marc Applebaum, died on December 24, 1977, when he was struck by a car being operated by an uninsured driver as decedent was walking along the side of a road. At the time of his death decedent was scheduled to begin employment on January 16, 1978 with the University of Miami-Jackson Memorial Medical Center as a respiratory therapy technician. His starting salary was to be $10,000 per year.

Applebaum was named administrator of the estate. He and the decedent's survivor, decedent's mother, Esther Applebaum, retained Marvin F. Galfand, Esq. to represent the estate and to collect any monies due from State Farm. In connection with claims against the no-fault policy, Galfand and Applebaum specifically asked defendant about liability for lost wages. A representative of the company told them that State Farm provided no coverage for such a loss and was responsible only for survivor's benefits and uninsured motorist protection. Galfand and Applebaum relied upon these representations and the decedent's mother executed the following release on August 7, 1978 in connection with her receipt of $2,500 in survivor's loss benefits:

the undersigned hereby releases and forever discharges State Farm Mutual Auto Insurance Co. it agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly any and all claims arising out of the "survivor's loss" of the personal injury protection endorsement of State Farm Policy No. A242235–38, which has resulted or may in the future develop from an accident which occurred on or about the 24th day of December, 1977....

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purposes of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.

Also on August 7, 1978, she executed another release after receiving $15,000.00 in payment of the uninsured motorist protection which read, in part, as follows:

Received of State Farm Mutual Auto Ins. Co. hereinafter called the company, the sum of Fifteen Thousand ($15,000.00) in full settlement and final discharge of all claims under the above numbered policy because of bodily injuries known and unknown and which have resulted or may in the future develop, sustained by David Applebaum by reason of an accident or occurrence arising out of the ownership or operation of an uninsured automobile ... which occurred on or about the 24th day of December 1977 at Lower Moreland Pa.

Further, Applebaum, as administrator of decedent's estate, executed the following affidavit on August 14, 1978:

Morris Allen Applebaum, being duly sworn according to law, deposes and says as follows:

1. He is the administrator of the Estate of David Marc Applebaum.

2. He approves the settlement of the Uninsured Motorist claim against State Farm Automobile Insurance Company for the sum of $15,000.00

3. He approves the payment of the settlement directly to Esther Applebaum.

4. He will bring no claim against State Farm Automobile Insurance Company for Uninsured Motorist benefits or survivors benefits.

5. He approves the settlement of the claim for survivors benefits for the sum of $2,500.00

6. He approves the payment of the settlement directly to Esther Applebaum

Attorney Galfand was involved in the execution of the affidavit.

In *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), the Pennsylvania Supreme Court held that the No-fault Act entitled the survivor of a person killed in an automobile accident to claim the decedent's work loss benefits. Under the authority of *Heffner*, on May 20, 1983, attorney Galfand demanded $15,000 in work loss benefits plus 18% interest and counsel fees from State Farm. When no payment was forthcoming, on May 24, 1983, Applebaum filed a lawsuit in the Court of Common Pleas of Philadelphia County on behalf of his decedent's estate to recover the work loss benefits payable under the policy. The within lawsuit was filed on April 17, 1984.

III. *Discussion.*

In disposing of the merits of the cross-motions for summary judgment we will adhere to the following well established standard:

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only where the moving party establishes that no genuine issue exists as to any of the material facts in the case, and that he is entitled to judgment as a matter of law. *See, e.g., Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). Courts should resolve any doubts as to the existence of issues of material fact against the moving party, and view all inferences in the light most favorable to the nonmoving party. [citation omitted].

*Fragale & Sons Beverage Co. v. Dill,* 760 F.2d 469, 472 (3d Cir.1985) (brackets added).

A. *Applebaum's Claim Was Timely Filed.*

Defendant contends that this action is barred by the limitations period set forth in the No-Fault Act. Section 106(c)(1) provided, in pertinent part, as follows:

If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

■ Two limitations periods are set forth in this section. The first bars an action for work loss benefits (which is a benefit for a loss arising otherwise than from death) brought later than two years "after the victim suffers the loss." To determine when the victim has suffered a work loss the Pennsylvania Supreme Court has held that the loss accrues when he misses his first paycheck and that the limitations period begins to run anew with every missed paycheck. In other words, an action to recover work loss benefits under the Act may be commenced within two years from anytime the victim suffers work loss or, at the latest, within two years after the victim's accrued work loss equals the maximum amount recoverable under the Act for work loss, $15,000. *See Kamperis v. Nationwide Insurance Co.*, 503 Pa. 536, 469 A.2d 1382 (1983). The second limitations period is a statute of repose. It prohibits an action for work loss benefits later than four years after the accident. *See Myers v. USAA Casualty Insurance Co.*, 298 Pa.Super. 366, 444 A.2d 1217 (1982).

■ Decedent died on December 24, 1977. This action was filed on April 17, 1984. State Farm argues, based upon decedent's prospective salary as a respiratory technician, that decedent's lost salary would have been equal to or greater than $15,000 by July of 1979. Hence, the limitations period would have run by July of 1981.[1] Under the second limitations provision an action was required within four years of the accident or by December 24, 1981. Applebaum missed both of these deadlines and it is argued that his claim is time barred.

■ Plaintiff contends that previously filed class actions for post mortem work loss benefits have tolled the limitations period. *See Kruth v. Liberty Mutual Insurance Co.*, 346 Pa.Super. ——, 499 A.2d 354 (1985).[2] He relies upon *Wilson v. State Farm Mutual Insurance Co.*, No. 5116 S 1978 (Dauphin Co.), *Nye v. Erie Insurance Exchange*, No. 5349 S 1979 (Dauphin Co.), *Seibel v. Aetna Casualty & Surety Co.*, No. 653 S 1981 (Dauphin Co.), and *Neyhard v. State Farm Mutual Automobile Insurance Co.*, No. 608 March Term 1981 (Phila. Co.), as independent bases for tolling the statute in the instant case.

**1.** In its reply brief, defendant argues differently, taking the position that the limitations period began to run on the date of death and that therefore the period expired on December 24, 1979. Based upon *Kamperis,* we reject this argument.

**2.** We look to Pennsylvania law in this diversity action to determine whether the statute of limitations has been tolled. *See Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160 (3d Cir. 1976).

■ To rely upon a previously filed class action plaintiff must have been able to qualify as a member of the class in the previous action. *See Kruth, supra.* On November 3, 1980, the class action in *Wilson* was commenced by the filing of the complaint.[3] Wilson purported to represent a broad class of previously employed Pennsylvania residents insured by State Farm who sustained fatal injuries. But on July 20, 1981, the court in *Wilson* certified the following class, broken down into two subclasses:

1) When a deceased motor vehicle accident victim is survived solely by a spouse or solely by a spouse and minor children or solely by minor children, these survivors shall constitute a subclass.

2) When a deceased motor vehicle accident victim is not survived by a spouse or by minor children, but is survived solely by other "survivors" delineated in § 103 of the Act *and* these other "survivors" have been recognized by the insurance carrier as dependent, either by the carrier's having paid them "survivor's loss" benefits or otherwise, then these other survivors shall constitute a subclass.

Defendant argues that *Wilson* was thus a survivor's class action which could not toll an estate class action such as the instant one. Plaintiff points out that his decedent was a member of the second *Wilson* subclass because the decedent's mother was recognized by State Farm as a dependent by paying her survivor's loss benefits under the No-Fault Act. Thus, *Wilson* should toll the limitations period for him. In any event, plaintiff argues that it makes no difference whether an action for work loss benefits is brought by the administrator of the estate or the decedent's survivor.

---

3. On November 17, 1978, in accordance with Pennsylvania procedural rules, a praecipe for writ of summons was filed but this did not begin the class action which could only be commenced by the filing of the complaint. *See* Pa.R.Civ.P. 1703(a).

4. It seems, however, that plaintiff's argument has little merit in light of *Freeze v. Donegal*

■ We do not have to resolve this issue.[4] Even if *Wilson* could be relied upon by plaintiff, this lawsuit is still untimely under *Wilson.* As noted above, for the purposes of the limitations period, *Wilson* was commenced on November 3, 1980. Decedent's two year period for work loss benefits would have expired in July of 1981. Approximately, one year and three months of the limitations period had run, therefore, before *Wilson* tolled the statute, and left Applebaum with approximately nine months to bring suit if he chose not to join the class action. *See American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). On June 10, 1982, the court in *Wilson* approved a settlement of the class action which did not include Applebaum.[5] The instant action, instituted to redress that omission, was not filed, however, until April 17, 1984, almost two years after the settlement and well beyond the nine month period remaining to bring suit. Accordingly, plaintiff cannot rely upon *Wilson* to support timely filing in the instant case.

■ Plaintiff's reliance upon *Nye* is misplaced for the same reason. *Nye* was filed on November 15, 1979, some three and one half months after the statute began to run on Applebaum. The trial court dismissed the suit against all defendant insurers except Erie Insurance Exchange on February 4, 1981. While the Pennsylvania Superior Court reinstated the suit on December 10, 1982, the state supreme court upheld the trial court's decision and dismissed the class action against, among other defendants, State Farm, on December 30, 1983. From the time of the trial court dismissal until its reversal by the superior court, approximately one year and nine months, and from the date of the ultimate dismissal by the supreme court until the date of the

---

*Mutual Insurance, Co.,* 301 Pa.Super. 344, 447 A.2d 999 (1982), *aff'd,* 504 Pa. 218, 470 A.2d 958 (1983).

5. The court had broadened the class to include claimants like Applebaum but, nevertheless, Applebaum was not identified as a member of the final class.

filing of this lawsuit, April 17, 1984, some three and one half months, plaintiff could not have relied upon the *Nye* action. The total period of time the statute was not suspended was approximately two years and four months. Accordingly, plaintiff's action was not timely within the chronology of *Nye* and *Nye* has not tolled the statute for him.

■ Plaintiff's reliance upon *Seibel* is also misplaced for the simple reason that *Seibel* was not a contract action to recover post mortem work loss benefits. Contrary to plaintiff's assertion, nowhere in the court's opinion in *Seibel* is the action characterized as an attempted assumpsit action for failure to pay no-fault benefits. Rather, the claim raised in *Seibel* was for a state anti-trust violation claiming as damages no-fault work loss benefits wrongly denied, but nevertheless a common law anti-trust claim. We believe that plaintiff should not be permitted to rely upon this action to preserve a contract claim. *See Crown, Cork & Seal Company, Inc. v. Parker,* 462 U.S. 345, 355, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628, 636 (1983) (Powell, J., concurring).

■ Under the holding of *Kruth, supra,* however, the instant action was timely filed in the wake of *Neyhard.* The latter action was filed on March 4, 1981 against State Farm on behalf of the "legal representatives of deceased insureds of defendant who are entitled to work loss benefits" denied to them by defendant. Plaintiff had until July of 1981 to file his own lawsuit and thus the *Neyhard* suit, filed within that time frame and still being litigated, tolled the limitations period.

In so concluding, we reject defendant's contentions that plaintiff cannot rely upon *Neyhard* because: (1) the filing of his own suit waives the protection of *Neyhard;* and (2) *Neyhard* itself is untimely. Defendant's argument that *American Pipe* should have limited applicability when a plaintiff has obviously not relied upon a prior class action has merit but we must reject it in light of *Kruth, supra.* Defendant has also not provided us with any facts to support

his claim that *Neyhard* is untimely. To the contrary, it admits that the untimeliness of the *Neyhard* action is only now being litigated in the trial court. Under these circumstances, we decline to accept its contention that the untimeliness of the *Neyhard* action would bar the instant case.

### B. *Applebaum's Individual Claim Is Barred by a Release.*

The release executed in connection with the receipt of survivor's loss benefits provides, in pertinent part, as follows (brackets added):

> the undersigned [decedent's mother] hereby releases and forever discharges State Farm Mutual Auto Insurance Co. ... from any and all claims, demands, damages, actions, causes of actions or suits of any kind or nature whatsoever ... which has resulted or may in the future develop from [decedent's accident].

> Undersigned hereby declares that the terms of this settlement have been ... voluntarily accepted for the purposes of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

The release executed in connection with the receipt of uninsured motorist's benefits similarly was in "full settlement and final discharge of all claims" resulting from the accident. Applebaum, as administrator of the estate, executed an affidavit a week after the releases were signed in which he stated, in pertinent part, that he "approves the settlement of the Uninsured Motorist claim" and he "approves the settlement of the claim for survivors benefits...."

■ Defendant relies on the release executed in connection with the survivor's loss benefits settlement to bar the instant action.

In Pennsylvania, the general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release. *Evans v. Marks,* 421 Pa. 146, 218 A.2d 802 (1966). A signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake. *Kent v. Fair,* 392 Pa. 272, 140 A.2d 445 (1958).

*Three Rivers Motor Company v. Ford Motor Company,* 522 F.2d 885, 892 (3d Cir. 1975).

Additionally, when the parties manifest an intent to settle all accounts, the release will be given full effect even as to unknown claims. *Id.*

■ Initially, it would appear that defendant cannot rely upon the release to bar the administrator's claim. The release was only executed by the decedent's mother. Applebaum merely approved that settlement while only agreeing, without mentioning work loss benefits, to bring no claim for uninsured motorist benefits or survivor's benefits. In writing, reading the release and affidavit together, Applebaum only unambiguously approved the mother's release of her claims against State Farm. Without more, as stated by Applebaum: "At no time was a settlement agreement reached whereby [Applebaum] ever agreed not to sue State Farm Insurance Company for work loss benefits...." (Affidavit of Applebaum, dated November 14, 1985, Exhibit 7 to plaintiff's response to defendant's motion and plaintiff's counter-motion) (brackets added).

Plaintiff, however, has not made this argument. He clearly understands himself to be bound by the release and argues that its scope was not intended to reach his claim for work loss benefits. Additionally, plaintiff points to the lack of court approval of the settlement as invalidating it.

■ As to the scope of the survivor's loss benefit release the answer is clear. While plaintiff charges defendant with unfairly ignoring important language in the release, we believe that defendant has referred us to the pertinent and dispositive language. The release is obviously a general one, executed with the intention of waiving any and all existing or future claims, as well as a specific claim for survivor's loss benefits, arising from decedent's accident. It was meant to settle the matter finally and bars Applebaum's individual claim here. *See Three Rivers Motor Company, supra.*

Plaintiff argues that section 106(b)(1) of the No-fault act required court approval of the settlement of the no-fault claim for survivor's loss benefits. Since defendant did not obtain court approval, the release cannot be used to shield defendant from this action. Section 106(b)(1) provided, in pertinent part, as follows:

(b) Release or settlement of claim.—

(1) Except as otherwise provided in this subsection, no-fault benefits shall not be denied or terminated because the victim executed a release or other settlement agreement. A claim for no-fault benefits may be discharged by a settlement agreement for an agreed amount payable in installments or in a lump sum, if the reasonably anticipated net loss does not exceed two thousand five hundred dollars ($2,500). In all other cases, a claim may be discharged by a settlement to the extent authorized by law and upon a finding, by a court of competent jurisdiction, that the settlement is in the best interest of the claimant and any beneficiaries of the settlement, and that the claimant understands and consents to such settlement....

■ Contrary to plaintiff's position this section did not require court approval for the discharge by release of every claim. A claim for no-fault benefits could have been discharged by settlement if the "reasonably anticipated net loss" did not exceed $2,500. In the instant case decedent's mother's claim was settled for that amount. State Farm could not be charged with knowledge in 1978 that in 1980 the state supreme court in *Heffner, supra,* would allow work loss benefits for dece-

dents. Hence, the reasonably anticipated net loss did not exceed $2,500 and court approval of this settlement was not necessary. It follows that section 106(b)(1) does not prohibit defendant from relying upon the release.

Plaintiff further claims that a release does not extend to claims of which one party was wrongfully kept in ignorance by the other. He asserts that State Farm's "misrepresentations" as to coverage for work loss benefits constitutes such wrongful withholding of information. We disagree.

■ Mr. Galfand is an attorney. At most plaintiff has established that in defendant's dealings with him in connection with his handling of the estate and settlement of the insurance claims, it took the position that it had no liability for payment of work loss benefits when the insured victim has died. (See plaintiff's statement of uncontested facts, ¶¶ 22–24). This was an entirely reasonable position for State Farm to have taken at the time. *See Heffner, supra,* 491 Pa. at 454 n. 12, 421 A.2d at 633 n. 12; *Gabovitz v. State Automobile Insurance Ass'n,* 106 Dauphin Co. Rep. 289 (1985). Galfand was free to litigate this issue if he disagreed with State Farm's interpretation of the Act. There was no misrepresentation or fraud here.

Plaintiff also asserts that the release is invalid because section 106(b)(3) provides that a release can be set aside if it is "procured by fraud or if its terms are unconscionable." Based upon our discussion above, this section is inapplicable to the instant case.[6]

C. *Plaintiff's Motion For Summary Judgment and the Pending Motions to Intervene.*

■ Because Applebaum cannot be a class representative, consideration now of a motion for summary judgment on behalf of the putative class would be premature. At this juncture, it is proper to consider the motions to intervene on behalf of those persons who believe that they could properly replace Applebaum. In *Haas v. Pittsburgh National Bank,* 526 F.2d 1083 (3d Cir.1975), the Third Circuit Court of Appeals held that the timely filing of a class action by a purported class representative tolled the statute of limitations against a defendant that the plaintiff had no standing to sue. The court concluded that the amendment of the complaint to add a plaintiff who did have standing against the defendant was proper under *American Pipe, supra,* even though the latter case dealt only with the failure of a class action to satisfy the numerosity requirement. *Haas* indicates that this class action should remain viable until a decision has been made on the motions to intervene. If any of the movants qualify as a class representative, then the instant class action can proceed, including a disposition of plaintiff's motion for change of venue.

We will issue an appropriate order.

### ORDER AND JUDGMENT

AND NOW, this 31st day of January, 1986, it is ordered that:

1. Defendant's motion for summary judgment as to the individual claim of plaintiff, Morris Allen Applebaum, is granted and judgment is hereby entered for defendant, State Farm Mutual Insurance Company, on plaintiff's individual claim.

2. Defendant shall have twenty (20) days from the date of this order to file a brief in opposition to the various motions to intervene, including plaintiff's motion for certification and intervention, dated October 11, 1985. Thereafter, further briefing shall be in accordance with local rules.

---

**6.** Because Applebaum's claim must be dismissed based upon the release, we will not reach the *lis pendens* issue.