## Dodson v. Nationwide Insurance Co.

*Robert W. Lape Jr.,* for plaintiff.
*Gregory S. Olsavick,* for defendant.

KOPRIVA, *J.,* January 29, 1991 — Now before this court is a motion for summary judgment. Defendant sets forth two alternative arguments in support of its position that plaintiffs are barred from

maintaining this action. Firstly, defendant asserts plaintiffs' no-fault action is barred by a general release which plaintiffs executed on October 29, 1987. Secondly, defendant contends this action is time-barred under the provisions of 40 P.S. §1009.106(c)(1). We will address the arguments seriatim.

Plaintiff Susan E. Dodson was injured in a one-vehicle accident which occurred on August 22, 1984. Plaintiff had been a passenger in a vehicle driven by Christine Dodson. Plaintiffs filed a negligence action against Christine Dodson. Nationwide insured Christine Dodson and paid the policy limit of $25,000 to plaintiffs in settlement of the third-party claim. In conjunction with the settlement, plaintiffs executed a release in favor of Christine Dodson and Nationwide on October 28, 1987. Said release reads as follows:

*"For the sole consideration* of $25,000, the receipt and sufficiency where is hereby acknowledged, the undersigned hereby releases and forever discharges Christine Dodson and Nationwide Insurance Company, their successors and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned, but all expressly deny any liability, from any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the second day of August, 1984, at the intersection of Business Route 220, and U.S. Route 220 in Greenfield Township, Blair County, Pennsylvania.

"Undersigned hereby accepts the draft as final payment of the consideration set forth above."

Thereafter, plaintiffs filed a complaint against Nationwide to collect first-party no-fault benefits. Coincidentally, Nationwide insured both the third-party tort-feasor and plaintiffs. Therefore, defendant claims the above-stated release serves to discharge Nationwide's obligation to plaintiffs under their first-party no-fault policy in addition to settling the third-party claim.

Generally, written releases are construed according to the rules governing the construction of contracts. *Sparler v. Fireman's Insurance Company,* 360 Pa. Super. 597, 521 A.2d 433 (1987). The intent of the parties to the release is paramount, and in construing a release, a court should adopt an interpretation which "ascribes the most reasonable, probable and natural conduct of the parties." *Sparler, supra,* citing *General Mills Inc. v. Snavely,* 203 Pa. Super. 162, 168, 199 A.2d 540, 543 (1964). A signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake. *Applebaum v. State Farm Mutual Automobile Insurance Company,* 626 F.Supp. 1299 (M.D. Pa. 1986).

At first blush the language of the release seems to indicate Nationwide is completely released from "any and all claims, demands, damages, actions, causes of action or suits of any kind" with regard to the accident involving plaintiffs of August 2, 1984. Therefore, on the face of the release, it would seem the within claim for no-fault benefits would be included in such broad language. However, in considering the circumstances surrounding the execution of the release, the question of whether it serves to bar this action is far from clear. In consideration for said release defendant paid to plaintiffs for their third-party claim the sum of $25,000. That amount is equal to the policy limit of defendant's insurance

contract concerning Christine Dodson. The release is totally silent regarding no-fault benefits. Had the discharge of defendant's no-fault obligation been intended by the parties, it is reasonable to expect that the release would have so stated.

The most persuasive factor in support of the argument that the parties never intended the release to discharge the no-fault obligation is failure to comply with 40 P.S. §1009.106(b)(1). This statute sets forth the provisions that must be followed in order to effectuate a valid release of a no-fault contractual obligation. Plaintiff argues that this statute is not applicable to the situation at bar, as the sections applies only to claims for no-fault benefits, and therefore would not affect a general release which perhaps "inadvertently" included no-fault carriers by its broad language. Further, since the release at issue involved a third-party tort action and not a no-fault claim, the provisions of section 106(b)(1) are not applicable. This court finds no merit to counsel's argument.

Subsection 106(b)(1) of the No-fault Act applies to *any* settlement or release *purporting* to discharge no-fault obligations. The obvious purpose for this section is to protect claimants by requiring judicial determination to insure that any settlement discharging an insurer from no-fault payments be in the best interest of the claimant and give the insurance company no advantage. The legislature made it more difficult for insurers to release themselves from no-fault responsibility than it is to release themselves from liability for payment of tort claims. Despite this obvious and sound reasoning, defendant would have us find that where no-fault benefits are allegedly discharged through settlement of a tort claim rather than a no-fault claim, somehow the judicial safeguards of section 106(b)(1) are not ap-

plicable. Such reasoning has no logical basis and we will not permit defendant to circumvent the clear legislative intent of section 106(b)(1).

There is no question in this court's mind that the release of no-fault liability was not *intended* by either party when the release was signed on October 28, 1987. It would appear defendant is attempting to take advantage of the coincidence in this situation that it insures *both* tort-feasor and plaintiff. To interpret the release as discharging Nationwide's first-party no-fault obligation to plaintiff without court approval under these circumstances, would defeat the purpose for which the act was created; to compensate accident victims for injuries suffered, with court review.* See 40 P.S. §1009.102(b). Defendant's reliance on *Applebaum, supra,* is misplaced. Had the reasonable anticipated net loss in *Applebaum* been found to be greater than $2,500, court approval would have been required and the release would not have served to bar the claim for work-loss benefits. *Applebaum, supra,* at 1306.

We therefore find that the release does not bar the instant claim for no-fault benefits. The failure to obtain court approval for the alleged discharge of no-fault liability is a fatal flaw in defendant's attempt to obtain summary judgment based upon the executed general release in the third-party claim.

Defendant's alternative argument proposes that this action is time-barred under the terms of 40 P.S. §1009.106(c)(1). Said subsection sets forth time limitations governing when no-fault actions may be brought. Defendants rely on the first part of section 106(c)(1), which reads as follows:

---

* Under 40 P.S. §1009.106(b)(1), court review is required when the amount paid exceeds $2,500. We have no value to consider other than the $25,000 sum paid through the general release.

"If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced not later than two years after the last payment of benefits."

Plaintiffs rely upon the appropriate portion of 106(c)(1) as it appears that no-fault benefits have previously been paid to plaintiffs in the form of medical benefits. Plaintiffs supplied this court with an affidavit from Diane J. Gehret, secretary for Dr. Dennis Ridenour. Ms. Gehret states that no-fault medical payments were received from Nationwide for services rendered to Susan Dodson. No-fault payments were made as recently as November 13, 1987. The complaint in this matter was filed August 4, 1988. Thus, the action for further no-fault benefits was commenced well within two years of the last no-fault payment in compliance with section 106(c)(1). See *Jones v. Keystone Insurance Co.,* 364 Pa. Super. 318, 528 A.2d 177 (1987).

In light of the foregoing opinion, we enter the following

## ORDER

And now, January 29, 1991, it is hereby ordered, directed and decreed that defendant's motion for summary judgment is denied and dismissed.