628 F.2d 833
 Patti A. HEUSLE and George and Joyce Heusle, her parents,
Appellants in 79-2483 and 79-2690,
v.
The NATIONAL MUTUAL INSURANCE COMPANY, Celina Group; The
Travelers Insurance Company, and United States of America,
Coast Guard and Department of Health, Education and Welfare,
United States of America, Coast Guard and Department of
Health, Education and Welfare, Appellants in 80-1072.
 Nos. 79-2483, 79-2690 and 80-1072.
 United States Court of Appeals,
Third Circuit.
 Argued June 10, 1980.
Decided Aug. 25, 1980.
 
 Clifford A. Rieders (argued), Stuart, Murphy, Smith, Mussina, Harris & Rieders, Williamsport, Pa., for appellants in 79-2483 and 79-2690.
 Alice Daniel, Asst. Atty. Gen., Washington, D. C., Carlon M. O'Malley, Jr., U. S. Atty., Scranton, Pa., Freddi Lipstein (argued), William Kanter, Dept. of Justice, Civil Division, Washington, D. C., for United States of America, appellant in 80-1072.
 Charles J. Tague, Jr. (argued), Kenneth D. Brown, Hager & Roesgen, Williamsport, Pa., for appellee, The Travelers Ins. Co.
 C. Edward S. Mitchell (argued), Mitchell & Mitchell, Williamsport, Pa., for appellee, The National Mut. Ins. Co., Celina Group.
 Joseph P. Mellody, Jr., Hourigan, Kluger & Spohrer, Civil Division, Wilkes-Barre, Pa., for amicus curiae Pa. Trial Lawyers Ass'n.
 Before GIBBONS, WEIS and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The Pennsylvania No-fault Motor Vehicle Insurance Act, Pa.Stat.Ann. tit. 40, §§ 1009.101-.701 (Purdon Supp. 1980), radically changed the legal liabilities of the state's automobile operators and their insurers. In this appeal, we conclude that one consequence of that legislation is to deny the federal government reimbursement for medical expenses incurred as a result of injuries received by a member of the Armed Forces in an automobile collision. We also determine that amounts expended by the government for the medical care of a person on active duty are not collateral source benefits recoverable by the insured from the no-fault insurance carrier. Accordingly, we will affirm the district court's judgment which reached the same results.
 
 
 2
 Plaintiffs Patti Heusle and her parents, George and Joyce Heusle,[1] sued the Travelers Insurance Company, the National Mutual Insurance Company, and the United States, described in the complaint as defendant or involuntary plaintiff. The parties submitted the case under an agreed statement of facts, and the court granted summary judgment against the plaintiff and the United States, in favor of National Mutual Insurance Company, but in favor of the plaintiff against the Travelers Insurance Company to the extent of unpaid medical expenses and counsel fees incurred in securing that award.
 
 
 3
 The plaintiff received serious injuries while riding as a passenger in a car struck by another automobile at an intersection in Oriole, Pennsylvania. At the time of the accident, October 23, 1976, she was on active duty with the United States Coast Guard. Because Heusle was a member of the Armed Forces, the United States paid $20,335.65 in medical expenses incurred by her at nongovernmental institutions and provided services at governmental facilities having a reasonable value of $4,563.00, the total outlay being $24,898.65. In addition, the plaintiff incurred medical expenses of $4,235.53 that were not paid by the government.
 
 
 4
 The plaintiff was an insured under a Pennsylvania no-fault automobile policy issued in the name of her father by the Travelers Insurance Company. The driver of the automobile in which plaintiff was a passenger was insured for both no-fault and third-party liability by the National Mutual Insurance Company. Under Pennsylvania law, both no-fault policies provided coverage for medical expenses without limit. See Pa.Stat.Ann. tit. 40, § 1009.202(a) (Purdon Supp. 1980); Zagari v. Gralka, --- Pa.Super. ---, --- & n.6, 399 A.2d 755, 758 & n.6 (1979). The district court determined that Travelers provided the applicable no-fault coverage for plaintiff and was responsible for payment of unreimbursed medical expenses. Accordingly, National Mutual was absolved of any liability for medical expenses. No appeal has been taken from this determination.[2]
 
 
 5
 The plaintiff contended that she was entitled to be paid for a sum representing all medical expenses, including those constituting payments made and services furnished by the government. Several theories were advanced to support her position. First, she asserted that recovery could be had under the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651-2653 (1976) (MCRA), on behalf of the United States. That Act provides that when the United States furnishes medical care to a person who is injured under circumstances creating tort liability on a third party, the government may recover the value of medical services from the third party. As another possible ground for recovery by the government, it was contended that the United States was either an additional insured or a third-party beneficiary. As an alternative for recovery on her own behalf, plaintiff asserted that the payments by the government should be viewed as falling under the collateral source rule, thus making her eligible to receive the benefits under the No-fault Act.[3]
 
 
 6
 The district court, ruling on a motion to dismiss, disposed of any claims based on the MCRA. The trial judge concluded that the Pennsylvania No-fault law had abolished tort liability for medical expenses incurred in this type of automobile accident and therefore held that recovery could not be had under the federal statute.
 
 
 7
 The remaining issues were disposed of on cross-motions for summary judgment.[4] First, the district court ruled that Travelers, and not National Mutual, was the applicable insurer. The court then turned to the merits and decided that the United States was neither an additional insured under the Travelers' policy nor a third-party beneficiary. The plaintiffs also were denied recovery under the collateral source theory. The court pointed to § 206(a) of the Pennsylvania No-fault law, Pa.Stat.Ann. tit. 40, § 1009.206(a) (Purdon Supp. 1980), which provides that in computing loss the insured should exclude "all other benefits . . . received by or available to an individual because of the injury from any government." From this provision, the district court reasoned that to the extent medical services had been paid for or furnished by the government, the plaintiffs had suffered no compensable loss. Travelers' victory was not total, however. Some bills had not been paid by the government and the insurance company was directed to pay them, together with an attorney's fee for accomplishing that recovery.
 
 
 8
 Stated generally, the appeal involves two separate, though interconnected issues the contention that the government is entitled to recover under the MCRA and the claims for recovery based on either the insurance policy or the No-fault law. We will discuss the issues in that order.
 
 I.
 THE FEDERAL CLAIM
 The MCRA reads in pertinent part:
 
 9
 "In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured . . . person . . . has against such third person to the extent of the reasonable value of the care and treatment so furnished. . . ."
 
 
 10
 42 U.S.C. § 2651(a) (1976).
 
 
 11
 The operation of this statute in the context of a routine negligence case is relatively straightforward; the government simply stands in the position of a favored subrogee to the claim of an injured party against the tortfeasor. E. g., United States v. Moore, 469 F.2d 788 (3d Cir. 1972), cert. denied, 411 U.S. 905, 93 S.Ct. 1528, 36 L.Ed.2d 195 (1973). It is complicated in this case, however, because the Pennsylvania No-fault statute has drastically altered the legal liabilities created when personal injury occurs in an automobile accident.
 
 
 12
 The government contends that the net effect of the Pennsylvania statute is to substitute the no-fault carrier, in this case Travelers Insurance Company, for the actual tortfeasor, and in that circumstance, the MCRA would permit recovery against the insurer. For the reasons stated below, we reject this contention.
 
 
 13
 The No-fault Act retains some residuals of the traditional tort system in that after meeting a threshold, there may be a common law action for such items of damage as pain and suffering, disfigurement, and inconvenience, but not medical expenses. Pa.Stat.Ann. tit. 40, § 1009.301(a)(5) (Purdon Supp. 1980). As a means of recovering the cost of medical care, Pennsylvania chose to abolish tort liability and substitute a contractual arrangement. Accordingly, the statute provides that auto insurance policies must provide unlimited first-party medical expense coverage. Id. § 1009.202(a).[5] Responsibility for medical expenses being exclusively contractual, see Singer v. Sheppard, 464 Pa. 387, 346 A.2d 897 (1975), a person covered by a no-fault insurance policy must look only to his insurance company for the payment of medical bills arising out of an automobile accident.[6] In this case, then, Patti Heusle had no tort claim for medical expenses against the driver of the auto in which she was riding, or, for that matter, against the operator of the other car.
 
 
 14
 It is from this perspective that we must analyze the claim under the MCRA. The statute speaks in terms of tort liability. See United States v. Farm Bureau Insurance Co., 527 F.2d 564, 566 (8th Cir. 1976). That the language speaks only to tort accountability is not surprising since the Act was enacted before the adoption of most no-fault statutes. The MCRA does not purport to create a federal law of negligence, but rather accepts state substantive law in determining when tort liability exists. United States v. Studivant, 529 F.2d 673, 676 & n.6 (3d Cir. 1976); see Bernzweig, Public Law 87-693: An Analysis and Interpretation of the Federal Medical Care Recovery Act, 64 Colum.L.Rev. 1257, 1262 (1964). Although the statute confers an independent right of action on the federal government, United States v. Merrigan, 389 F.2d 21 (3d Cir. 1968), one that is not subject to a state's statute of limitations, United States v. Gera, 409 F.2d 117 (3d Cir. 1969), a state's rule on interspousal immunity, United States v. Moore, supra, or other procedural restrictions, nevertheless the question whether tort liability exists must be resolved by a resort to state law. See 1 L. Jayson, Handling Federal Tort Claims § 219.06, at 9-242-243 (1972). In this case, therefore, since there was "no tort liability upon some third person . . . to pay damages" for medical expenses, there was no claim in tort to which the United States could be subrogated under the MCRA.
 
 
 15
 One state intermediate appellate court has held, United Services Automobile Association v. Holland, 283 So.2d 381, 385 (Fla.Dist.Ct.App.1973), and a federal court of appeals has suggested in dictum, United States v. Government Employees Insurance Co., 605 F.2d 669, 672 (2d Cir. 1979), that the absence of traditional tort liability does not deprive the United States of its right to recover medical expenditures under the MCRA. Aside from noting that neither of these decisions arose in the context of Pennsylvania's no-fault scheme, we simply do not find them persuasive. Instead, we are in accord with the reasoning of the New Jersey courts, which have "reject(ed) the view that (no-fault's) implicit intention was to make no-fault carriers universal tortfeasors for their insureds." Sanner v. Government Employees Insurance Co., 150 N.J.Super. 488, 494, 376 A.2d 180, 183 (App.Div. 1977) (per curiam), aff'd per curiam, 75 N.J. 460, 383 A.2d 429 (1978).[7]
 
 
 16
 The United States argues that enforcement of the MCRA should not be subject to the vagaries of state tort law, and that the statute's aims are best accomplished by uniform national application. See United States v. Moore, supra. Whatever force there may be to that argument, it was not the route Congress chose to follow. It made a choice to limit recovery to instances where there was tort liability on a third person for medical expenses. Moreover, a federal statute that is dependent upon state substantive precepts is not at all anomalous. In the Federal Tort Claims Act, 28 U.S.C. § 2674 (1976), for example, Congress decided to utilize state substantive tort law with its many variations as a basis for establishing liability against the federal government. See W. Prosser, Law of Torts 972 (4th ed. 1971).
 
 
 17
 Lastly, it is contended that denying recovery here will result in a windfall to the insurance company. It seems to us that the comment misses the mark. The concept of "windfall" is misleading because ultimately one large group or the other (and they overlap) must shoulder the burden. Congress has chosen, as a matter of policy, to subrogate the government's claim only when liability for medical expenses flows from tort. It is Congress that is free to consider the larger aspects of the problem that is, whether the burden of paying medical expenses should be borne by the large group of premium payers or by the large group of taxpayers. The legislative branch can best decide whether the federal government's interest outweighs the state's aim of reducing the cost of auto insurance. The resolution of this problem is for Congress, and not for us.
 
 
 18
 We conclude that the United States is not entitled to recover from the Travelers Insurance Company under the MCRA.
 
 II.
 CLAIMS BASED ON STATE LAW
 
 19
 The remaining theories of recovery also must be resolved by an analysis of state law. It is argued that the government is a third-party beneficiary or additional insured under the Travelers policy and would therefore be entitled to reimbursement for the amounts it has paid. The alternative contention is that the payments made by the United States should be considered separate from insurance benefits, and, therefore, Heusle should be entitled to recover under a collateral source theory.
 
 
 20
 Since the MCRA is not applicable to contractual claims, the United States does not have any federal statutory basis to assert the status of additional insured or third-party beneficiary. Accordingly, it must rely upon the terms of the policy and the Pennsylvania Act. The government calls our attention to § 106(a)(2), Pa.Stat.Ann. tit. 40, § 1009.106(a)(2) (Purdon Supp. 1980), which allows the no-fault carrier to make direct payment "to the supplier or provider" of services and argues that it is entitled to recoup payments made on Heusle's behalf. But this argument must fail.
 
 
 21
 As we see it, § 106 authorizes payment to a provider when it has rendered services for which the insured party would otherwise be responsible. When, as in this case, the insured is not obligated to pay, there is no reason to require the carrier to do so. Here, the Coast Guard was required by statute to furnish medical care, see 10 U.S.C. § 1074 (1976), and, therefore, the government should not be entitled to recover what it was required to disburse in any event.
 
 
 22
 We believe that this conclusion is bolstered by § 111(a)(4) of the No-fault Act, Pa.Stat.Ann. tit. 40, § 1009.111(a)(4) (Purdon Supp. 1980), which bars providers of health and accident insurance from seeking subrogation against the no-fault carrier.[8] To the extent the government can be said to occupy such a position, this section evidences a legislative intent that such entities not enjoy a recovery under some other label, such as third-party beneficiary. For these reasons, we reject those cases that have permitted recovery under a third-party beneficiary or implied insured theory against the no-fault provider.[9]
 
 
 23
 The argument of entitlement based on the status of an additional insured under the Travelers insurance policy is similarly misplaced. The government is unable to point to any language in the policy that would confer coverage. Entitlement to be treated as an additional insured is purely a contractual matter to be enforced by the person or entity asserting that right. The language in the policy providing that the insurer "may pay the insured or any person or organization providing the (medical) services" grants the insurer an option, but does not impose an obligation enforceable by the "provider." We therefore conclude that the government may not recover, either as a third-party beneficiary or as an additional insured.
 
 
 24
 The final issue, then, is whether the payments made by the United States can be viewed as a collateral source. Travelers contends that the payments made and services provided by the United States on account of Patti Heusle's injuries are within § 206(a) of the No-fault Act, which reads in pertinent part:
 
 
 25
 "(A)ll benefits . . . that an individual receives . . . from social security (except those . . . under Title XIX . . . and . . . those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits . . . received by . . . an individual because of the injury from any government . . . shall be subtracted from loss in calculating net loss."
 
 
 26
 Pa.Stat.Ann. tit. 40, § 1009.206(a) (Purdon Supp. 1980) (emphasis supplied). If this position is correct, then recovery on the collateral source theory must be denied Heusle and the United States.
 
 
 27
 In interpreting the Pennsylvania statute, we, of course, would be bound by the decisions of the state supreme court. That court, however, has not construed § 206(a), and the opinions of the lower Pennsylvania courts do not address the problem presented here. The plaintiff argues that two of those cases, Erie Insurance Exchange v. Sheppard, 39 Pa.Cmwlth. 30, 394 A.2d 1075 (1978), and Bowdren v. State Farm Insurance Co., 6 Pa.D. & C.3d 292 (Phila.Com.Pleas 1977), support her position. Although neither binds us, like the district court, we choose to distinguish them.
 
 
 28
 A factor in these cases was the nature of the benefits at issue. Section 206 exempts from the deduction preference certain government benefits such as Medicare benefits involving use of the lifetime reserve that are exhaustible. These types of benefits were involved in the cases relied on by plaintiff. In the case at hand, however, we are faced with a federal statute providing unlimited medical coverage. Given that context, we fail to see how the clear language of § 206 would permit any construction other than that the medical expenses paid by the government are benefits.
 
 
 29
 Plaintiff also argues that governmental payments such as Medicare, which are paid to the citizenry at large as participants, are distinguishable from money paid to individuals as employees of the government. The point is made that had a private employer paid the medical expenses, they would be considered to be from a collateral source and thus not within § 206. Hence, plaintiff says, including employee fringe benefits within the definition of government benefits discriminates against public workers.
 
 
 30
 We find nothing in the statute's unequivocal language to carve out such an exception. Moreover, a person in the Armed Services is not in the same position as an ordinary employee. Federal governmental employees have at least a part of their medical insurance benefits deducted from their pay. Members of the Armed Forces, on the other hand, are not charged with the expenses of medical care. By statute, the government is charged with providing medical treatment to such personnel. 10 U.S.C. § 1074 (1976). That benefit, therefore, is not bargained for by the members in the usual employer/employee sense. This factor, when combined with the unexhaustible character of the benefit, leads us to conclude that the statute precludes any recovery by Heusle from Travelers for the medical care provided by the government.[10]
 
 III.
 
 31
 The trial court properly found against the government and Heusle and in favor of the Travelers Insurance Company. Accordingly, the judgment of the district court will be affirmed.
 
 
 
 [1]
 For the sake of convenience, any reference to plaintiff or to Heusle shall be understood as referring to the injured party, Patti Heusle
 
 
 [2]
 As liability insurer for the driver of the car in which Heusle was a passenger, National Mutual entered into a settlement on the third-party claim of plaintiff for $22,500.00. Heusle also settled with the driver of the other vehicle for $17,500.00. The government makes no claim to any part of the total $40,000.00 settlement. We agree that since the interest of the United States here is solely with medical expenses, and because the third-party settlements did not include any allowance for than item, the government is not entitled to a portion of the settlement proceeds. See also Hohman v. United States, 628 F.2d 832 (3d Cir. 1980) (per curiam), decided this same day
 
 
 [3]
 The United States relied on plaintiff's advocacy in the district court and concurred in those arguments that would yield a recovery for the government the claim under the MCRA and the assertions that the United States was either a third-party beneficiary or an additional insured under the no-fault coverage. On appeal, plaintiff contends that the government waived its right to recover by not pressing any arguments before the district court. In view of our disposition, we need not meet this contention
 
 
 [4]
 This opinion is reported at 479 F.Supp. 274 (M.D.Pa. 1979). The decision on the motion to dismiss was not reported
 
 
 [5]
 In certain limited circumstances, e. g., where the tortfeasor is uninsured, medical expenses may be recoverable in a tort action. Pa.Stat.Ann. tit. 40, § 1009.301(a)(1) (Purdon Supp. 1980). None of these circumstances is present here
 
 
 [6]
 The Superior Court of Pennsylvania has gone so far as to construe this provision to prohibit the introduction of medical bills into the trial of an automobile negligence suit even when the only purpose is to be of some aid in determining a reasonable award for pain and suffering. See Zagari v. Gralka, supra
 
 
 [7]
 Although Sanner suggests that the government may have a subrogation right against the tortfeasor under New Jersey law, we find that Pennsylvania's removal of medical expenses from the tort area in this instance, and its explicit abrogation of subrogation, see Pa.Stat.Ann. tit. 40, § 1009.111(a)(4) (Purdon Supp. 1980), requires a contrary result here
 
 
 [8]
 Section 111(a)(4) provides in full:
 "In no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this act, have any right of subrogation with respect to said benefits."
 
 
 [9]
 In United States v. Government Employees Ins. Co., supra; and United States v. Leonard, 448 F.Supp. 99 (W.D.N.Y. 1978), the courts analyzed New York law and concluded that the United States was an intended beneficiary under that state's statute. But because New York's law differs in several important aspects from Pennsylvania's, we find the rationales of those cases to be of little assistance here
 
 
 [10]
 None of the parties contests the judgment in favor of Patti Heusle against the Travelers for $4,235.53 in reimbursement of medical bills incurred by her but not paid by the government