Mary A. **HOLBROOK**, Mary E. Holbrook, individually and as Mother and Next Friend of Daniel M. Holbrook, Plaintiffs, Appellants,

v.

**ANDERSEN CORPORATION**, et al., Defendants, Appellees.

No. 92–1902.

United States Court of Appeals, First Circuit.

Heard March 2, 1993.

Decided June 30, 1993.

**1340**

James M. Campbell with whom Michelle I. Schaffer, Ronald M. Davids and Campbell & Associates were on brief, for plaintiffs, appellants.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Paula D. Silsby, Sr. Litigation Counsel, were on brief, for defendants, appellees.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

BOUDIN, Circuit Judge.

The Holbrooks' two-and-a-half-year-old son, Daniel Holbrook, sustained severe and permanent injuries after falling through a second-floor window of the Holbrooks' apartment. Because plaintiff Mark Holbrook was employed by the United States Navy at the time of the accident, the United States paid 80 percent of the costs of Daniel's medical treatment under the Dependent's Medical Care Act, 10 U.S.C. § 1071 (the "Dependent's Act"). The Holbrooks then sued Andersen Corporation, the manufacturer of the window and screen, alleging negligence and product liability. The Holbrooks notified the United States of the initiation of the suit, but the United States did not intervene.

Three days before trial, the Holbrooks and Andersen settled the suit for $725,000.[1] This amount was far less than the complaint had sought, and the amount presumably reflected the parties' judgment about likelihood of success; Daniel Holbrook had been unsupervised at the time of the accident, and there were no witnesses. The United States was not a party to the settlement, nor did the settlement agreement provide that any money should be paid by Andersen to the United States in respect of the medical costs that the government had incurred. The settlement agreement did provide, however, that the Holbrooks would indemnify Andersen if the latter were held liable to the United States.

In its order approving the settlement, the district court *sua sponte* ordered that $139,028 of the settlement proceeds be placed in an escrow account to satisfy potential liens of the United States or others.[2] Six months later the United States moved to compel disbursement to it of the funds held in escrow, and shortly thereafter the United States formally moved to intervene in the action; the Holbrooks opposed both motions. The court ultimately granted both motions and after a recalculation of the government's actual payments ordered disbursement to the United States of $122,834. The balance of the escrow was remitted to the Holbrooks. The Holbrooks appeal, arguing that this disbursement was not authorized by law.

In claiming a right to a portion of the Holbrooks' settlement, the United States relies solely on the Federal Medical Care Recovery Act, 42 U.S.C. § 2651 et seq. ("the Recovery Act"). This statute grants to the government a right to recover from a third-party tortfeasor the reasonable value of medical services that the government has fur-

---

1. Attorneys' fees and expenses absorbed a large portion of this amount ($391,505.50). Of the balance, the Holbrooks were allotted a portion ($50,000) for direct expenses with the remainder to be held in trust for Daniel.

2. Local rules required court approval of settlements of claims brought on behalf of minor children. The court's escrow order may have been prompted by the Holbrooks' statement in their motion for court approval of the settlement that the Navy had paid 80 percent of the medical bills and that the total medical expenses amounted to $139,028.

nished under the Dependent's Act (or under other similar statutes). Specifically, the Recovery Act provides:

> In any action in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured person ... has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished.

42 U.S.C. § 2651(a). The statute then sets forth procedures for the government's enforcement of this right of recovery. The United States may "intervene or join in any action or proceeding brought by the injured or diseased person" or, if such an action is not commenced within six months, may "institute and prosecute legal proceedings against the third person who is liable for the injury or disease." *Id.* § 2651(b).

The parties direct their arguments in this case chiefly at the procedural component of the statute, section 2651(b). The Holbrooks argue that the United States' motion to intervene came too late, because it was not filed until after the Holbrooks' suit against Andersen was resolved by settlement. The United States responds by pointing to case law providing that the procedural devices set forth in section 2651(b) are not exclusive and that a motion to intervene may be filed "at any time," even after entry of judgment. *United States v. Merrigan,* 389 F.2d 21, 25 (3d Cir. 1968); *see also United States v. York,* 398 F.2d 582, 585–86 (6th Cir.1968). We think that the crucial issue is not *when* the government may intervene but rather *whom* it may proceed against once it makes an appearance in the case.

The statute grants to the United States a right to recover "from [the] third person" who is liable in tort for the injury. It makes no provision for the United States to recover against the injured party or from funds unconditionally paid to the injured party by the tortfeasor. Moreover, the United States' right to recover under the statute is contingent upon "circumstances creating a tort liability upon some third party." 42 U.S.C. § 2651(a); *Thomas v. Shelton,* 740 F.2d 478, 481 (7th Cir.1984) (tortfeasors' "liability under the Medical Care Recovery Act depends on their being found liable ... under the tort law of the pertinent state"); *United States v. Trammel,* 899 F.2d 1483, 1488 (6th Cir.1990) (same). There has been no such determination in this case.

■ "All courts which have considered the question have agreed that the statute gives the United States an independent right of recovery against the tortfeasor...." *United States v. Housing Authority of Bremerton,* 415 F.2d 239, 241 (9th Cir.1969). Thus, the government's right is not extinguished by the injured person's settlement and release with the tortfeasor. *See, e.g., United States v. Theriaque,* 674 F.Supp. 395 (D.Mass.1987). Indeed, the government's right against the tortfeasor under the Recovery Act is not defeated even by certain restrictions that might bar the injured person's own recovery.[3] There is thus no necessity for the United States to look to the injured party's settlement for compensation.

■ If the United States wishes to invoke the Recovery Act to recover its medical payments in this case, we think that under the plain language of the statute it must proceed against Andersen and seek to establish Andersen's tort liability. The language of the statute does not authorize the government to collect under the Recovery Act out of a settlement negotiated between the injured person and the tortfeasor. Nor is there any case law that permits such a recovery absent

---

**3.** *See Heusle v. National Mutual Ins. Co.,* 628 F.2d 833, 837 (3d Cir.1980) (procedural restrictions); *United States v. Moore,* 469 F.2d 788, 790 (3d Cir.1972) (state doctrine of interspousal im-

munity), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1528, 36 L.Ed.2d 195 (1973); *United States v. Gera,* 409 F.2d 117, 119–20 (3d Cir.1969) (state statute of limitations).

an express agreement designating for the government a portion of the settlement.

This case does not involve the peculiar facts of *Cockerham v. Garvin,* 768 F.2d 784, 787 (6th Cir.1985). There the Sixth Circuit allowed recovery out of settlement proceeds where "[t]he [injured person] and tortfeasor specifically agreed that part of the money paid over to the [injured person] would be held in escrow pending a claim by the [United States] for specific medical bills...." The court treated the escrow as giving the government "beneficiary" status akin to that enjoyed by the third-party beneficiary of a contract. *See id.* at 784. The court also decided that on remand the government's share of the settlement should be determined by "equitable considerations," taking account of any discounted settlement accepted by the victim and the litigation costs he had borne. *Id.* at 787. The government does not argue that in this case there was any third-party beneficiary agreement between the Holbrooks and Andersen.

Rather, the United States says that its present claim has been misunderstood. It argues that its attempt to recover from the escrow is not a claim against the Holbrooks but rather, consistent with the Recovery Act, is a claim against Andersen, which supplied the funds. This is a word game that does not reflect the reality of the situation: Andersen has *paid* the settlement amount to the Holbrooks in exchange for a release of claims against it. The money belongs to the Holbrooks and their son quite as much as Mr. Holbrook's salary paid to him by the Navy belongs to him and not to the Navy which is the source of the funds.

The best argument for the United States is based on policy considerations. Andersen's payment to the Holbrooks is not technically an admission of liability, Fed.R.Evid. 408, but in reality the settlement reflects a judgment by Andersen that there is a risk of liability and that the case is worth that much to settle. But *to the extent* the tortfeasor is liable to the Holbrooks under tort law—an issue mooted by the settlement—it is also liable to the United States for any medical costs paid by the latter.

Of course the United States still has a right to sue independently and, if it can prove liability, to collect its full medical expenses with no settlement discount at all. But everyone knows that if fault is debatable and the tortfeasor settles with the injured party, the chances for the United States to recover may be much reduced. Any lawyer would prefer to try a tort case in which the co-plaintiff is an injured two-and-a-half-year old, especially where a verdict for the child virtually requires an award for the co-litigant.

What is even more troubling is that the tortfeasor has an incentive in such a case to pay the injured party something extra in settlement precisely in order to uncouple the two claims. Once the United States is left to litigate on its own, it not only has no sympathetic victim to take the lead before the jury but must bear its own litigation expenses. And, if (as here) the alleged tortfeasor has an indemnity agreement with the victim, making the latter responsible for any award to the United States, the victim or witnesses associated with the victim now have an economic incentive to minimize the tortfeasor's fault when the United States sues.

These policy concerns are not overwhelming: the United States is not without litigation resources, in this case it has the benefit of much discovery already done by the Holbrooks, and perjury laws cabin the witnesses' testimony. Had it anticipated the problem, Congress might well have provided a legislative solution along the lines of the *Cockerham* case: The Recovery Act could easily have said that if the tortfeasor and victim settle, the United States can claim for its medical costs an "equitable" share of the settlement to be determined by the court. But Congress did not to so—it cannot anticipate every problem—and so the question posed is whether the courts should do the repair work themselves.

The answer here, we think, is no. The statute does not literally forbid this "equitable share" solution, but neither do the provisions of this reasonably detailed statute provide for any such recovery against the victim or the settlement fund. Nor can we be certain that Congress would wish to impose

an "equitable share" solution; perhaps it might pick a quite different solution or no solution at all. There is no magic formula to say when courts should do patch-work repairs to legislation, but in our view this is not such a case. If Congress wants a solution, it is best for it to tailor its own.

The judgment of the district court is *reversed.*