**Dorothy G. MOSEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV–N–97–312–ECR.**

United States District Court,
D. Nevada.

May 4, 1998.

**1134**

Robert H. Perry, Ltd., Reno, NV, for Plaintiff.

Ruth L. Cohen, Assistant U.S. Attorney, Las Vegas, NV, for Defendant.

## ORDER

EDWARD C. REED, District Judge.

Before the Court are the cross motions for summary judgment filed by Defendant United States (# 12) and Plaintiff Dorothy Mosey (# 13). These motions are now ripe and are decided as outlined below. Opp'n/Mot. (# 13); Opp'n/Reply (# 15); Reply (# 16).

## BACKGROUND

The underlying facts are undisputed. Ms. Mosey contracted polio in the 1950's and has been a partial quadriplegic ever since. Between 1991 and 1994 a non-profit corporation, Community Services Agency of Washoe County ("CSA"), provided her personal care attendants. On April 4, 1994, while transferring her from her bed to her wheelchair, one of CSA's attendants dropped her, causing her significant injury necessitating hospitalization. Although the record does not indicate how she qualified for treatment there, Ms. Mosey was placed in the Reno, Nevada Veterans Affairs hospital, where she received medical care valued at about $50,000.

A year later, Ms. Mosey sued CSA. Correspondence ensued between her attorney and the VA; we discuss this in greater detail below. Eventually the lawsuit proceeded to arbitration, where Ms. Mosey was awarded some $210,000 in damages, about 25% of which constituted "special damages"—i.e., damages basically reflecting the cost of Ms. Mosey's medical care—which damages are currently held in Plaintiff's counsel's client trust account. Ms. Mosey's attorney and the government exchanged more correspondence, with the government seeking full reimbursement for her medical care and Ms. Mosey seeking an "equitable reduction." Eventually the parties agreed to resolve their dispute by having Ms. Mosey file the present declaratory relief action. Both sides have moved for summary judgment, which motions are now ripe. We note that the government has shown excusable neglect for failing to timely oppose Plaintiff's motion for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## II. Jurisdiction

■ The Ninth Circuit recently urged district courts "expressly to consider whether a properly filed declaratory judgment action should be entertained and to record its reasons for doing so." *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1226 (9th Cir.1998) (en banc). We need not dwell on

this issue long; of the many factors we must consider in evaluating the propriety of a declaratory relief action, only one, the availability and relative convenience of other remedies, weighs in favor of declining jurisdiction. *Id.* at 1225 & n. 5 (listing factors). Specifically, although Plaintiff seeks declaratory relief because she is in essence the party being sued (and would normally be the defendant), declaratory relief in this case will adjudicate both liability and damages, and this action should properly have been brought by the United States as party-plaintiff. However, every other factor weighs in favor of jurisdiction, and we therefore exercise it.

## III. Which Test to Apply

■ The facts are undisputed and the parties agree that there is one question presented: how much of Ms. Mosey's special damages should the government get? The parties also agree that the source of the government's claim on the funds is the Federal Medical Care Recovery Act, 42 U.S.C. § 2651 ("FMCRA").[1] Where the parties disagree is the legal test this Court should apply in answering the question presented.

Our research reveals seven published opinions in the last thirty years in cases where the government in effect sued an injured party under FMCRA for a share of funds from a settlement or judgment, but had not intervened or joined in the underlying action—for all intents and purposes the same situation we face here. These seven opinions reflect three schools of thought on the question presented: 1) the government should be reimbursed for its entire medical outlay (*U.S. v. Nation,* 299 F.Supp. 266, 267 (N.D.Okla. 1969)), 2) the government has no cause of action against the victim and therefore may

---

1. The FMCRA provides in pertinent part:
   (a) In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and treatment ... to a person who is injured or suffers a disease ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished, ... and shall, as to this

right be subrogated to any right or claim that the injured or diseased person ... has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person ... to assign his claim or cause of action against the third person to the extent of that right or claim.
42 U.S.C. § 2651.

not recover against her at all, but must instead sue the statutory third party (*Holbrook v. Andersen Corp.*, 996 F.2d 1339, 1341 (1st Cir.1993); *U.S. v. Farm Bureau Ins. Co.*, 527 F.2d 564, 566 (8th Cir.1976); *Fanning v. Acromed Corp.*, 176 F.R.D. 158, 179 (E.D.Pa. 1997) (following *Holbrook*); *U.S. v. Cipinko*, 1994 WL 589455, *1 (N.D.Cal.1994) (following *Holbrook*, although arguably in dicta)), and 3) the government may recover some portion of the settlement or judgment based upon a "balance of the equities" (*Commercial Union Ins. Co. v. U.S.*, 999 F.2d 581, 588 (D.C.Cir.1993); *Cockerham v. Garvin*, 768 F.2d 784, 787 (6th Cir.1985)).[2] The United States urges us to follow *Nation*, Plaintiff urges us to follow *Commercial Union* and *Cockerham*, and neither side urges us to follow *Holbrook* or *Farm Bureau Ins. Co.* or their progeny. The closest Ninth Circuit case on point does not address this issue and is not particularly helpful; we must therefore determine which out-of-Circuit legal authority to follow. *U.S. v. Housing Authority of the City of Bremerton*, 415 F.2d 239 (9th Cir.1969).

This task is made considerably easier by the fact that the parties only seek to apply either the *Nation* test or the *Commercial Union/Cockerham* test. That is, both sides agree that the United States is entitled to at least some reimbursement. Accordingly, we distinguish *Holbrook, Farm Bureau Ins. Co.*, etc., on the ground that Plaintiff is not challenging the government's authority to obtain reimbursement from her under FMCRA.[3] We are thus left with determining whether to follow *Nation* or *Commercial Union/Cockerham*.

Given this limitation, we discern a principled distinction between these cases. In *Nation* the dispute was between the government and the victim's attorney, who had asserted a right to a contingency fee on the amount in controversy, while in the other two cases the dispute was only between the government and the victim, and attorney's fees were not at issue. The legal principle arising from this distinction is: if the victim herself does not seek a share of the medical reimbursement fund, then it should all go to the government, but if the victim does seek a share of the fund on her own behalf then the equities should be balanced as between the government and the victim; in either case, the victim's fee arrangement with her attorney should be disregarded.

## IV. Application

Given this test, we must balance the equities. Although the government argues that this case is similar to *Nation* in that Plaintiff is really seeking fees for her attorney, the evidence indicates that Plaintiff's counsel agreed to calculate his fee based only on Ms. Mosey's recovery of general damages, and not upon her recovery of special (i.e., medical cost) damages. January 8, 1997 Letter (# 12, Ex. I). That is, this case truly is a dispute solely between Ms. Mosey and the government. Consequently, *Nation* does not apply.

Equitable factors to consider include: 1) whether the government passively allowed the injured party to bear all the risks and costs of litigation, *Cockerham*, 768 F.2d at 787) 2) whether, in the case of a settlement, the award obtained reflects a "settlement discount," *id.*, and 3) the terms of any agreement between the government and the victim, or the tortfeasor and the victim, as to the government's right to reimbursement. *Holbrook*, 996 F.2d at 1342; *see also Cipinko*, 1994 WL 589455 at *1. Additionally, because Plaintiff apparently paid out no funds of her own for the medical care the VA provided, and she would therefore receive a windfall were she to keep all of her special

---

**2.** We take *Commercial Union's* self-characterization of its holding at face value and assume that it endorses an "equitable" distribution of the amount in controversy. We note, though, that *Commercial Union's* notion of equity is highly simplistic: "each claimant receives 'a share of the fund proportionate to their share of the total judgment figure.'" 999 F.2d at 589 (quoting Dobbs, Law of Remedies § 2.12 at 130 (1973)).

**3.** We commend Plaintiff for agreeing to pay back the government for the care she received. However, *Holbrook* articulates a powerful argument that the government has no statutory authority to seek reimbursement directly from an injured party. 996 F.2d at 1341–42.

damages, the balance is weighted in favor of complete governmental reimbursement.

The second factor weighs in favor of full reimbursement, since Ms. Mosey's arbitration award (though the result of alternative dispute resolution) was not discounted at all. The third factor is a wash. The parties' correspondence memorializes negotiations over how much of the special damages the government would get, but it seems clear that no meeting of the minds occurred on this issue. Certain items were agreed to; plainly, Plaintiff agreed to add a clause to her complaint stating that special damages were being sought "for the use of" the United States, and the United States agreed to provide documents relevant to the litigation without much fuss. Beyond that, however, the record does not reveal any agreement— Plaintiff asserted a desire for an "equitable reduction," but the government never wavered from its insistence on full reimbursement. Except as outlined above, the case law cited by the parties, both in the state court case and in the present case, is not on point. In sum, we conclude that both parties fully performed the obligations arising from whatever agreement they had, and the third factor cancels out.

What we find dispositive, then, is the first factor—whether the government passively let Ms. Mosey assume the risks and costs of litigation. The government did indeed passively sit by. Although its cooperation with Ms. Mosey with respect to document production is significant, the VA did not provide any other assistance to her, but instead waited until after she collected her award to refer the matter to the U.S. Attorney's office. An "equitable reduction" of the government's outlay is in order.

## V. Amount

■ Neither party has suggested a particular sum or percentage by which to reduce the government's award, and none is readily apparent from the facts of the case. We will therefore select a percentage based on analogical reasoning. In particular, by analogizing the instant action to common fund recoveries, federal False Claims Act cases, and a hypothetical hiring of outside counsel, we conclude that the government's recovery should be 75% of what it actually claims.

This case has some of the features of a common fund action, where an attorney sues to recover money in which a number of parties or creditors will share. *E.g., In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1297 (9th Cir.1994). Here, of course, only two parties claim a share of the fund, but the underlying lawsuit was in essence a common fund action in miniature. In common fund cases, the benchmark fee to the attorney recovering the money is 25%. *Id.* By analogy, the benchmark share of the present "common fund" to which Plaintiff is entitled is also 25%.

Similarly, this case has some features of a federal qui tam action, where a whistle-blower sues on behalf of the United States to recover money defrauded from the government. Here the elaborate procedural mechanisms of the False Claims Act are absent, but the roles played by the parties correspond to the roles specified in that statute. By analogy to qui tam actions where the government does not sue on its own behalf, or intervene in the private party's suit, the Plaintiff is entitled to between 25% and 30% of the total recovery. 31 U.S.C. § 3730(d)(2).

Lastly, had the government pursued this action by hiring outside counsel (rather than assigning it to the U.S. Attorney) to sue CSA on a contingency basis, the government would have been compelled to pay the retained attorney a standard contingency fee. Although this fee is typically 33%, in this case Plaintiff's counsel agreed to take only 25%. January 8, 1997 Letter (# 12, Ex. I). By analogy, therefore, had the government hired Plaintiff's counsel it would have had to make do with 75%, of the total recovery.

## CONCLUSION

The amount sought by the United States is $49,592. We find that Plaintiff is entitled to keep 25% of that, and Defendant is entitled to the remainder, or $37,194. Because the money is currently in Plaintiff's hands, we will enter judgment for Defendant for $37,-194.

*IT IS, THEREFORE, HEREBY OR-DERED* that Defendant's motion (# 12) for summary judgment is *GRANTED IN PART.*

*IT IS FURTHER ORDERED THAT* Plaintiff's motion (# 13) for summary judgment is *GRANTED IN PART.*

*IT IS FURTHER ORDERED THAT* the Clerk shall enter judgment in favor of Defendant and against Plaintiff in the amount of $37,194.